## JOHN CONNESS

*v.*

## THE INDIANA, ILLINOIS AND IOWA RAILROAD COMPANY.

*Opinion filed December 18, 1901.*

1. CONDEMNATION—*when verbal lease is not a sufficient basis for claim of damages.* Where the land condemned for a railroad right of way is contained in a quarter section owned in fee by defendant, the existence of a verbal lease of a life estate in an adjoining quarter section, which enables him to farm the two tracts as one farm, is not ground for a claim of damages to the tract containing the right of way by reason of interference with the enjoyment of the lease.

2. SAME—*what cannot be considered in estimating damages.* Where the defendant in condemnation owns the fee in the quarter section containing the strip condemned for right of way and has a vested remainder in an undivided half of the adjoining quarter section, which he is farming with his own land as one farm under a verbal lease of the life estate, the fact that the right of way divides the quarter sections and separates the water supply and buildings, which were on the leased quarter section, from his own land, can not be considered in estimating damages to the land not taken, upon the theory that the two tracts are thereby separated and the farming of the two as one farm rendered impossible.

3. SAME—*when an instruction against considering supposed dangers is proper.* In a proceeding to condemn a right of way, an instruction that the jury "should not take into account any supposed danger to which the defendant's stock, or himself, or his property, might be exposed by reason of the operation of the railroad," is not improper, where there are no buildings near enough to be likely to be destroyed by fire communicated from the locomotives.

4. WORDS AND PHRASES—*"fair cash value" and "actual cash value" mean the same thing.* "Fair cash value" and "actual cash value" mean the same thing, viz., the fair or reasonable cash price for which the property can be sold on the market.

5. INSTRUCTIONS—*party cannot complain of an error he has induced.* Appellant cannot complain of the giving of an instruction asked by the appellee which was marked "refused" by the court but afterwards submitted to the appellant's counsel with the question, "Do you desire this instruction refused or do you prefer that it should be given?" to which the appellant's counsel replied, "I don't think that is the law, but I think you had better give it."

6. APPEALS AND ERRORS—*when amount of condemnation verdict will stand.* A verdict in condemnation returned by the jury after a view of the premises will not be set aside as contrary to the evidence unless it appears to be grossly inadequate or excessive.

APPEAL from the County Court of LaSalle county; the Hon. HENRY W. JOHNSON, Judge, presiding.

This is an appeal from the county court of LaSalle county in a condemnation proceeding for the right of way of the appellee. The appellant is the owner of the south-west quarter of section 24, township 31, north, range 2, east of the third principal meridian, and is also the owner of the remainder, after the expiration of the life estate of his mother, Mary Conness, of the undivided half of the north-west quarter of the same section. A number of years prior to this proceeding appellant's father owned the north-west quarter, and by deed conveyed it for life to his wife, Mary Conness, with remainder to the appellant, John, and his brother, Benjamin. When this suit was begun and prosecuted all the three last named parties were living, the mother occupying the land and the two sons living there also. The strip of land sought to be condemned is something less than one hundred feet in width, extending the entire width of the south-west quarter of said section 24 from east to west, and the north side or boundary of said strip is common to the north boundary or quarter section line of said south-west quarter. The strip contains practically 5.001 acres of land. The life tenant, the mother, is seventy-six years of age. The appellant claims that he and his brother, Benjamin, have a verbal lease of the life estate of their mother of the north-west quarter, and had for a number of years prior to the beginning of this procedure been farming the north-west quarter and south-west quarter as one farm, which they term a stock farm. All the farm buildings, which are numerous and substantial, are situated on the north-west quarter. The only water supply and appliances for use thereof consist of two wells, one for house purposes and the other about the farm lots, the latter being equipped with pumps, tanks and conveyance pipes. The natural dip of the land is to the south,

and there are several lines of tile drainage starting from the north-west quarter and extending south, across the quarter section line, through the south-west quarter to the natural outlet. By the taking of the right of way in the manner proposed, appellant contends, the farm will be divided into two separate farms, one comprising the north-west quarter and the other the south-west quarter, less that portion taken by appellee.

When the application was filed for this proceeding appellant filed a cross-petition, setting up his rights and interests in the lands not taken and claiming damages on account of such lands. This proceeding is against John W. Conness only, the mother and his brother, Benjamin, not being parties. The hearing was in May, 1900, and the jury, after hearing the evidence and viewing the land, returned a report and verdict fixing the compensation for the land actually taken (5.001 acres) at $625, special damages to remainder of the south-west quarter not taken at $465, and special damages to the interests of appellant in the north-west quarter at $53.33⅓. Upon this verdict, after overruling motions for a new trial and in arrest of judgment, the court entered judgment, from which this appeal is prosecuted.

Eight errors are assigned of record and insisted upon:

*First*—That the court erred in excluding the evidence of a verbal lease of the life estate of Mary Conness in said north-west quarter from her to appellant and his brother, and in connection with that, evidence of damages to appellant by separating his two interests in the two quarters, thereby rendering the farming and carrying on of said two quarters in the manner theretofore done impossible.

*Second*—In not permitting appellant to introduce evidence showing damages to his interest in the north-west quarter by the separation thereof from the south-west quarter, owned by him exclusively, which he insists, so far as he is concerned, constituted one farm.

*Third*—In requiring that the special damages should be considered and estimated, as to the separate quarter sections, without regard to the interests of the other, or their contiguity.

*Fourth*—In refusing to permit appellant to introduce evidence of the verbal lease of the life estate of Mary Conness to appellant and his brother. This error is included in the first assignment.

*Fifth*—In giving instructions numbered 2, 3, 7, 10, 12, 13, 14, 15, 16, 17 and 18 for appellee.

*Sixth*—In refusing to give instructions 29 and 30 for appellant.

*Seventh*—In instructing the jury orally, after the reading of all the written instructions, in the following language, to-wit: "As to the first form of verdict,—the value of the land,—you must, as a matter of course, give something for that; as to the other two forms, if you do give anything for other damages, then you will fill out and use said forms."

*Eighth*—The verdict is contrary to the weight of the evidence.

TRAINOR & BROWNE, for appellant.

CARY & WALKER, and REEVES & BOYS, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This case has been before this court on appeal from a former hearing, in which the present appellee was appellant, and is reported in 184 Ill. 178. In the opinion of the court, and with a view to a further hearing of the case, we said (p. 180): "The estate in remainder in the north-west quarter was a vested interest, the value of which could be determined, and if that estate was damaged we see no good reason why the damages might not be assessed in this proceeding. * * * The lands were already *separated as to interest and estate*, and the only evidence admissible as to the north-west quarter was con-

cerning defendant's estate therein. If his interest in the north-west quarter was in any way affected by being separated from his other lands, it required careful discrimination and the limiting of the evidence to his interest, and in this respect the court erred. It appeared that the defendant and his mother and brother lived together as a family on the place, and he testified that the lease from his mother was oral to himself and his brother. Counsel on both sides say that it was subject to the Statute of Frauds, and voidable. At any rate, he furnished no basis whatever for the assessment of damages to his share of the leasehold interest, and evidence including it should not have been admitted. Whether the leasing was for a share of the crops, or what the rental was, or the value of the leasehold interest, did not appear in any manner."

The first, second, third, fourth and fifth errors all relate to the same question and may as well be considered together.

While appellant was upon the witness stand, and without asking him a single question as to the character of his lease, or the length of term he had, or as to the rent, —whether cash or part of the crops,—his counsel made this offer: "Thereupon the defendant, by his attorney, offered to prove by the defendant, John Conness, that this railroad right of way as laid out divides up and separates the north-west and south-west quarters of section 24, in township 31, referred to in the testimony in this case; that said two quarters, at the time of the beginning of this suit, were farmed by the defendant, John Conness; that John Conness and his brother, Benjamin Conness, had, and still have, and for a long time before the commencement of this suit had, a verbal lease of the life interest of the mother, Mary Conness, in said north-west quarter from her, and were occupying and farming said quarter by virtue of and under said lease; that the putting through of said road and right of way will damage the defendant by separating his two interests in the two

quarters,—the south-west and the north-west quarters of section 24,—thereby rendering the farming and carrying on of said two quarters as one farm impossible in the way that they have been farmed prior to the putting through of said road and right of way,"—to which offer counsel for appellee objected, and the objection was sustained and appellant excepted. Again, without asking a question, the defendant's counsel made the following offer: "The defendant, by his attorney, then offered to prove by said witness that the putting through of said road and right of way will damage the individual interest of said John Conness in said north-west quarter by separating it from the said south-west quarter; that before the commencement of this suit said interest was not separated from said south-west quarter, but was joined to it and farmed in connection with it,"—to which offer appellee's counsel objected and the objection was sustained. It will be observed that these offers of evidence were in very general terms. Witness was allowed to testify where he lived and how he had been farming these lands. These rejected offers only added the proposed evidence as to the verbal lease and supposed damages accruing to him by reason of separating the two quarters.

When the case was before us on the former trial we practically held that the verbal lease of the north-west quarter for the life of the mother was a voidable lease, and for that reason of such uncertain duration that damages for interfering with the enjoyment of it, as related to the south-west quarter, would be too uncertain and would enter the field of speculative or imaginary damages, which are not allowed in this class of cases; and we indicated, as clearly as we could, that some reasonable basis other than the mere existence of such lease, and the exercise of rights under it, must be presented as the basis for any such claim of damages. It is again insisted that, inasmuch as we have found that this interest of appellant in the north-west quarter was a vested

interest, therefore damages must follow. The vested interest that appellant has in that tract is by virtue of the deed of his father, and is to the fee of the land after the expiration of the life estate, and, in so far as that interest extends, appellant has by the jury been allowed the damages to which he was entitled. His insistence that he is entitled to have taken into consideration the facts that upon the north farm are the wells and the buildings that he has been using and enjoying in connection with the south farm, and that by the building of this railroad between the two farms the enjoyment of these things will be interfered with, we cannot accede to. In addition to the uncertainty when he will enter into the enjoyment of his vested estate is the further uncertainty as to whether he will ever have any portion of the lands upon which are the buildings and wells which he now insists are so valuable to the use of the south-west quarter. He is not able to say that upon the death of his mother and a partition of the lands and the ascertainment of his particular portion all these benefits may not be given to his brother. In the partition of the north-west quarter commissioners would hardly be expected or required, to the detriment of the interests of the brother, to take into consideration the fact that appellant owned one hundred and sixty acres of land south of and adjoining it, and if they did, he cannot say but they would give him the west eighty, upon which none of these buildings appear to be. Looking at the offers as made, and construing them most strongly against appellant, as it is our duty to do, we are unable to say that they would furnish a basis upon which the character of damages contended for could be established, and without the evidence contained in such offers there was nothing in the record to warrant appellant's claim to the damages so contended for.

The instructions complained of in the fifth assignment of errors, being numbered 2, 3, 7, 10, 12, 13, 14, 15, 16, 17

and 18, were predicated upon the evidence in the record, with the offered evidence excluded. A special complaint is made, however, of instructions 4, 12, 13, 15, 17 and 18, upon the ground that they told the jury that in fixing the compensation to be paid they must not take into account the fact that the right of way divided the two interests of appellant in the two quarters, but must consider each interest separately and as if standing alone, or as if the other of the two interests belonged to an entire stranger. There was no error in this. In the view that we entertain and have expressed above, that the interests of appellant, as shown by this evidence, were so distinct and so unlike in character that they cannot, in law, be said to have anything in common, then those instructions were in keeping with that view, and were right.

It is further urged as to instruction 14 given for appellee, that it excluded from the jury proper elements of damage. In it the jury are told that they "should not take into account any supposed danger to which the defendant's stock, or himself, or his property, might be exposed by reason of the operation of said railroad over said proposed right of way." Appellant says that it shuts out all elements of danger to property, stock or person from fire or any of the numerous kindred causes always present where a railroad is in operation, and in support of the position appellant cites *St. Louis and Southeastern Railway Co.* v. *Teters,* 68 Ill. 144, *McReynolds* v. *Burlington and Ohio River Railway Co.* 106 id. 152, *Rockford, Rock Island and St. Louis Railroad Co.* v. *McKinley,* 64 id. 338, *Chicago, Burlington and Northern Railroad Co.* v. *Bowman,* 122 id. 595, and *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 id. 316. We have examined these cases and do not think they sustain the views contended for as applicable to this case. The evidence shows that there are no buildings at all on the south-west quarter, and that there are none near enough to this railroad, situated on the north-west quarter, that they are likely to be destroyed by fire from the railroad.

In *Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380, this court said (p. 383): "Investigations like this necessarily embrace a wide range of subjects, and it is hardly practicable to state any inflexible rule for estimating the damages to the land owner. The amount allowed should be sufficient to cover all the actual damage occasioned by reason of the construction of the road, for the land taken, for all physical injuries to the residue, and for all inconveniences of every character actually produced; but nothing should be allowed for imaginary or speculative damages, or such remote or inappreciable damages as the imagination may conjure up and which may or may not occur in all the future. The increased hazard from fire resulting from the use of steam as a motive power in most cases may be reckoned among the imaginary dangers that may or may not occur, and in case they do, the law affords a speedy and effectual remedy. No doubt if the road was constructed so near the owner's buildings as that the danger from fire would be real it would be an element of increased damage; but where the buildings are at such a distance that the danger is not real, but amounts to nothing more than a mere apprehension, the rule is different."

In view of our statute imposing upon railroads the duties of maintaining fences that shall be a protection to stock, and the provisions with reference to allowing fire to escape, the requirements as to the equipments of engines, and the numerous and extensive provisions of the statute in favor of the adjacent land owners in cases of this class of injury, it seems to us that there is no present reason for extending the rule of damages, in such procedure as this, beyond that class of injuries which would be calculated to depreciate the value of the land, with all these laws existing. As, for instance, it might be that, having a dwelling or a number of dwellings along and so near to the line of the proposed railroad that there would be great danger of fire and possible

loss of life consequent upon such fires, the courts may well hold that in such cases the statutory provisions and safeguards would hardly be sufficient, and that, notwithstanding them, valuable properties would, from such danger, be depreciated in value. (*Rock Island and Eastern Illinois Railway Co.* v. *Gordon,* 184 Ill. 456.) In *McReynolds* v. *Burlington and Ohio River Railway Co. supra,* we said (p. 156): "The basis upon which the larger amount of damages was estimated was, in part, of the most unreliable and unsatisfactory character,—such as the danger of crossing with teams, and danger of children and members of the family getting hurt, besides the general inconvenience in carrying on a farm divided into two parts by a railroad. The inconvenience of carrying on the farm because of the railroad would be a legitimate item of damage to be considered, although the damage from that source would be largely conjectural and not susceptible of anything like definite ascertainment; but injury from the other sources of danger above named would be but merely possible. Such merely possible damages do not form a proper basis for the assessment of the amount of damages. It is only such damages that are reasonably probable."

This instruction was given under peculiar circumstances. The record shows that it was asked by appellee and marked "refused," then submitted to counsel for appellant with this statement by the court: "Do you desire this instruction refused, or do you prefer that it should be given? I will give it if you think best." To which appellant's counsel replied: "I don't think that is the law, but I think you had better give it." The court adds that this statement is made from his memory, and not from any note or memorandum made at the time of the trial. We do not think the giving of this instruction was error, but if it should be, appellant is now estopped from insisting upon it. A party cannot complain of an error which he has himself induced the court to make or has consented to. *Smith* v. *Kimball,* 128 Ill. 583.

Appellant in his original brief complained of instructions 4 and 11, and insisted that they erroneously stated the rule of value to be "market value" or "cash market value," when they should have stated "fair cash market value." These instructions were not subject to that criticism, and in his reply brief appellant says that his complaint was intended to be against instructions numbered 2, 10 and 16, and that the giving of those numbers was a mere clerical error. Instruction No. 2 uses the expression "actual cash market value." No. 10 did not attempt to state the rule as to cash value or define the term "value" at all, but stated that the jury was not to be controlled by any evidence of offers, but that they should find what the "lands would actually sell for if exposed for sale, for cash." No. 16 uses the expression "actual cash market value." No. 2 defines what it means by "cash market value," as being "the price which the owner, if desirous of selling, would, under ordinary circumstances surrounding the sale of property, have sold the property for, and a person desirous of purchasing would, under such circumstances, have paid for it." This could mean nothing if it did not mean the fair cash market value. However, in any view of the case, this contention is not supported by authority, but, on the contrary, we have held that "fair cash value" and "actual cash value" mean the same thing, and that both mean the "fair or reasonable cash price for which property can be sold in the market." *Birmingham Fire Ins. Co.* v. *Pulver,* 126 Ill. 329.

By the sixth error assigned appellant insists that instructions 29 and 30 offered by him and refused by the court should have been given, and that their refusal was error. Instruction 29 states a correct principle of law and the rule applicable to ordinary cases of this kind. It is as to the measure of damages, and the vice of it is in the concluding clause, as applied to this case. After stating the rule the instruction concludes: "In determining this the jury may consider the injury to the land aris-

ing from inconveniences and injuries actually brought
about by the construction of the proposed railroad, if
any, or incidentally produced by dividing the land, as to
water, pasture and improvements," etc. This instruction
could only apply on the theory that appellant's dam-
ages were of the same character as applied to each tract
of land involved, and was inconsistent with the theory
upon which the court permitted the trial to proceed. The
very point was that there was no water or improvements
on the south one hundred and sixty, and appellant's con-
stant contention was to have the jury consider as ele-
ments of damage the cutting off of the south one hundred
and sixty from the water on the north quarter, and from
the benefit of the buildings and other improvements,
without having to cross the railroad and go through
fences to get to them.

The thirtieth instruction is in keeping with the ar-
gument and reasoning of the court in *Chicago, Burlington
and Northern Railroad Co.* v. *Bowman,* 122 Ill. 595, and told
the jury that "when the land actually taken is part of a
body of land used together as a farm, and that part has
a greater value in connection with the whole than as a
separate parcel, the measure of damages for such land
actually taken will be the fair cash market value of the
part taken as a part of the whole,"—in other words, as
we understand this, that if the five acres of land which
were taken would be more valuable as a part of the farm
than simply as five acres of land, the jury should give
appellant the benefit of the greater value. The evidence
shows that the jury did this. The land was shown to be
worth from $90 to $100 per acre, and the jury allowed
$125 per acre; and as appellant says on page 33 of his
brief: "As to the finding of compensation for land actu-
ally taken we have no serious complaint to make. While
it is not consistent with the testimony of the witnesses,
at the same time we feel that the witnesses placed their
values too high in said land taken, and are not disposed

to criticise the finding of the jury in so far." This instruction related wholly to the land taken, and if appellant received more than he expected and more than he feels that he is entitled to for that land, we will not be warranted in setting aside the verdict simply to cure a mistake of the court.

Appellant's next contention relates to the remarks of the court at the time the jury were instructed. These remarks are set out in the statement of this case, and do not seem to us to rise to the dignity of an instruction. They were such casual remarks as a court ordinarily makes to a jury concerning a verdict that may be somewhat difficult to make up. Here were involved three distinct verdicts, and a word or two from the court often saves much confusion when the jury goes to formulate its finding. All the matters of law that they were authorized to consider were fully incorporated in written instructions, and the remarks made only related to the manner of filling blanks in the instructions. *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 188; *Illinois Central Railroad Co.* v. *Wheeler,* 149 id. 525.

Lastly, it is said that the verdict is contrary to the evidence. We do not think so. We have carefully gone over this evidence, and feel from our examination of it that the jury sought to be fair between the parties and to give appellant all that he was entitled to under the law and the evidence, and that they did so. In this class of cases, where the jury is allowed to go and view the premises and act from their own knowledge as well as from the evidence, we should only feel warranted in setting it aside where it appeared grossly inadequate or grossly excessive. *Chicago Terminal Railroad Co.* v. *Bugbee,* 184 Ill. 353; *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 id. 547.

The judgment of the county court of LaSalle county is affirmed.