The Illinois, Iowa and Minnesota Railway Company

*v.*

Harry K. Freeman *et al.*

*Opinion filed June 23, 1904.*

1. Eminent domain—*when defendants are entitled to but three peremptory challenges.* If the land involved in a condemnation proceeding is a single tract, although owned by several persons as tenants in common, the defendants are together entitled to but three peremptory challenges to jurors. (*Fitzpatrick* v. *City of Joliet*, 87 Ill. 58, and *Gordon* v. *City of Chicago*, 201 id. 623, distinguished.)

2. Same—*what not admissible on question of damage to land not taken.* In a proceeding to condemn farm land for a railroad right of way, proof that farms in the same neighborhood adjoining or cut in two by another railroad in the same manner sold for more than farms that were remote from the railroad is not admissible.

3. Same—*effect where farm is divided into two parts by highway.* If the farm involved in a condemnation proceeding is divided into two parts by a public highway and petitioner's right of way does not touch one of the parts, the petitioner is entitled to the opinions of witnesses as to whether the part not touched will be damaged, separately, from the part crossed by the right of way.

4. Same—*what not a proper test of a witness' knowledge of value.* A witness in a condemnation proceeding who has stated the elements on which he bases his opinion that the damage to land not taken will be $50 per acre, may be cross-examined as to his knowledge of the value of farm lands and the effect of running a railroad across them, but it is not proper to ask him why he states the damage at "$50 an acre rather than $40, $60 or $75."

5. Same—*purpose for which land is adapted must affect its cash value.* The purposes for which land condemned for railroad right of way is adapted or may be used are immaterial, unless such purposes actually affect the present cash value of the property.

6. Same—*danger to persons crossing track not a proper basis for damages.* The danger to persons crossing proposed tracks upon the right of way sought to be condemned is so remote that it does not form a proper basis for the assessment of damages.

7. Same—*possible danger from fires by locomotives cannot be considered.* The jury in a proceeding to condemn land for railroad right of way should not consider any loss or damage which may be occasioned in the future by fires caused by the negligent operation of the railroad.

8. Same—*jury should not reach verdict by averaging testimony as to value.* The jury in a condemnation proceeding should not arrive

at their verdict by averaging the testimony of the witnesses upon the questions of land damages and values.

9. INSTRUCTIONS—*when instructions are properly refused.* It is proper to refuse instructions the substance of which is covered by others given or the language of which is misleading.

APPEAL from the County Court of Kane county; the Hon. W. H. HINEBAUGH, Judge, presiding.

This was a proceeding instituted by the Illinois, Iowa and Minnesota Railway Company, in the county court of Kane county, for condemnation of a right of way across appellees' farm, in said county. The petition sets out the land sought to be condemned, which consists of a strip containing 3.709 acres, and prays that the just compensation to be made to appellees on account of the use of said real estate be ascertained and assessed by the court. Appellees filed a cross-petition, alleging that they were also owners of other land contiguous to the property sought to be condemned; that all of said real estate was used by them in its entirety, as one tract, containing 126.42 acres, and alleging that the remainder of said premises, other than the strip sought to be taken, would be damaged, by locating said right of way through said premises, in the sum of $10,000, and praying that such damages may be awarded to them by the jury which fixes the compensation for the taking of the strip for a right of way.

The farm is owned by appellees, who are husband and wife, jointly, and is located about three miles west of the city of Aurora, Illinois. It is rectangular in shape, and the distance between its northern and southern boundaries is about three and one-half times as great as between its eastern and western boundaries. A macadamized public highway, known as the Galena road, running east and west through the farm, divides it into two parts. The part north of the highway contains about 60.7 acres and the part south of the highway about 55.3 acres. The part north of the highway has a creek running through it

in an easterly and westerly direction. There are 15 to 20 acres of land in cultivation between the creek and the Galena road, then there are about 10 acres of low bottom land along the creek not susceptible of cultivation, and the remainder north of the creek is covered with timber and stumps. The part south of the Galena road is all in a high state of cultivation and is more valuable than the part north of the road. This south part also contains the improvements, consisting of a large residence, a smaller house, designated as a tenant house, a large barn and numerous out-buildings. The barn is a large structure, containing seventeen box-stalls and four single stalls, as well as a harness room, tool room and carriage room. The improvements also include a large corn-crib, ice-house, hog sheds and a well house, with a windmill and gasoline engine for pumping water, and are estimated by the witnesses to be worth from $8000 to $12,000. The farm has been used as a stock farm and country home and is well adapted for those purposes. A road extends along the east side of the tract south of the highway and joins with the highway at the northeast corner of said tract. The improvements on the farm are all located in the north-east corner of this latter tract, and are thirty-five or forty rods from the strip taken in this proceeding for a right of way.

The right of way does not touch the tract north of the Galena road, but crosses that part south of the road in a north-easterly and south-westerly direction, dividing it into two irregular and triangular-shaped fields, the north field, on which are located the improvements, containing 18.1 acres and the south field 37.2 acres.

The testimony for appellant fixes the value of the entire farm, with the improvements, at $135 to $165 per acre and without the improvements at $80 to $100 per acre, while that for respondents fixes its value with improvements at $175 to $190 per acre and without the improvements at $100 to $130 per acre. Witnesses for the

petitioner fixed the value of the tract south of the Galena road, without improvements, at $85 to $125 per acre, and the witnesses for appellees were not questioned in reference thereto and expressed no opinion as to such value. The damage to the portion of the farm not taken was variously estimated by the witnesses for the petitioner at $1000 to $1500, and by the witnesses for respondents at $50 to $60 per acre. The jury viewed the premises.

The verdict rendered was for $637.50 as just compensation for the land actually taken and $4280.50 as damages to the remainder of the land not taken. A motion for a new trial was overruled and judgment entered on the verdict. Petitioner appealed.

The grounds relied upon for a reversal are, (1) that in empaneling the jury the court improperly permitted two peremptory challenges on behalf of Harry K. Freeman and two on behalf of Gusta C. Freeman; (2) the court erred in passing on objections to testimony; (3) the verdict is excessive and is not within the range of the evidence; (4) the court improperly refused the appellant's instructions Nos. 24, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37, and improperly gave appellees' instructions Nos. 10, 12, 13 and 14.

Murphy & Alschuler, (Charles E. Clyne, of counsel,) for appellant.

Hopkins, Dolph & Scott, and Russell & Hazelhurst, for appellees.

Mr. Justice Scott delivered the opinion of the court:

There was but one tract of real estate involved in the case at bar. Each of the respondents owned an undivided one-half thereof. They were permitted to exercise four peremptory challenges, on the theory that each was entitled to three challenges of that character. In empaneling the last four jurors each of the respondents exercised one peremptory challenge. One of the jurors

called into the box to take the place of the two so challenged was the juror Mead. Petitioner challenged this juror for cause, which was overruled, and thereafter, having exercised three peremptory challenges, petitioner challenged this juror peremptorily, and this challenge was also overruled.

Section 49 of the Practice act provides: "In all civil actions each party shall be entitled to a challenge of three jurors without showing cause for such challenge." Under this provision we have held that the word "party" includes all persons plaintiff or defendant, however numerous they may be, and that all persons plaintiff or defendant are entitled, in the aggregate, to but three peremptory challenges. *Cadwallader* v. *Harris,* 76 Ill. 370; *Schmidt* v. *Chicago and Northwestern Railway Co.* 83 id. 405.

Section 7 of the act on eminent domain provides: "The petitioner, and every party interested in the ascertaining of compensation, shall have the same right of challenge of jurors as in other civil cases in the circuit courts." Appellees contend that the words "every party interested" mean "each person interested," and in this connection refer us to the case of *Fitzpatrick* v. *City of Joliet,* 87 Ill. 58. In that proceeding a number of separate parcels of property owned by different persons were involved and the compensation for each was assessed by the same jury. It was there properly held that each person being the owner of a separate tract was entitled to three challenges. The statute provided that the judgment should have the effect of a several judgment as to each tract or parcel assessed. Under these circumstances the proceeding was virtually a separate suit as to each tract and owner. Here, however, there is but one tract. Each of the owners holds an undivided interest, and the term "party" must be given the same meaning as it has in the language above quoted from the Practice act.

Appellees correctly assume that a petitioner is entitled to but three peremptory challenges, but contend

that respondents, each being the owner of an undivided interest, if one hundred in number, would be entitled to one hundred times as many such challenges. Such could not have been the legislative intent. Where the land involved consists of but one tract,—that is, where it all lies in one body,—although it may be described as several lots or parcels, and it is owned by several persons, each of whom has an undivided interest therein, such persons constitute but one "party interested," and are entitled to but three peremptory challenges, in the aggregate, in a proceeding under the act in reference to eminent domain.

The case of *Gordon* v. *City of Chicago*, 201 Ill. 623, cited by appellant is distinguished from this one by the fact that it is under the statute in reference to special assessments.

A number of questions are presented in regard to the admissibility of evidence. We will discuss only those which it seems will necessarily arise upon another trial of the cause.

The proposed road of petitioner will run diagonally across respondents' farm. The Chicago and Iowa railroad runs through the same neighborhood. Petitioner sought to prove that the farms which either joined the right of way of that road or were cut in two diagonally by its tracks sold for the highest prices; that farms more remote sold for much less, although they were of the same general character; and also sought to show that there is an angling public highway leading from the city of Aurora north-westerly, in Kane county, which cuts all the farms along its line into irregular and triangular-shaped fields, and that this did not lessen the cash market value of those farms. A consideration of the most elementary principles of the law of evidence shows that this offer was properly refused. The question is whether or not this farm would be damaged aside from the value of the land actually taken, and if so, how much. To prove

that other land similarly situated has been benefited by
a road crossing it in the same way that petitioner pro-
poses to extend its line across this farm would be to open
the door for respondents to show, if they could, that the
value of still other farms of a similar character had been
decreased by having a railroad extended across them in
like manner, and would result in trying the question of
damages and benefits to lands other than respondents'.
If it increases the value of a farm in Kane county to be
cut in two diagonally by a railroad, that fact is no doubt
known to many persons. If such persons acquaint them-
selves with this farm they will then be qualified to tes-
tify that the market value of that portion of this farm
which is not taken by petitioner will be increased by
being cut in two diagonally by petitioner's line, if they
believe that to be the case. It is to the effect of the pro-
posed line on this particular farm that petitioner must
confine itself in taking the views of its own witnesses in
reference to the damages or benefits resulting from ex-
tending a railroad diagonally through a farm.

A public highway, running east and west, divides this
farm into two parts. The railroad will run across that
part south of the highway and will not touch that part
north of the highway. When petitioner offered its evi-
dence in regard to the amount of damages which would
be sustained by the land not taken, it sought by its in-
terrogatories to take the views of its witnesses in refer-
ence to the damages that would be sustained by the land
north of the highway, if any, separately from that por-
tion of the land lying south of the highway. The court
refused to permit this, and erred in so doing. It is pos-
sible that the land north of the highway would not be
damaged at all. One witness so testified, but on respond-
ents' motion the answer was stricken out. Those who
gave evidence for appellees testified that all the land
not taken would sustain damages and fixed the amount
per acre. By the method followed by the court appel-

lant's witnesses were compelled to state in a lump sum how much they considered the land of the entire farm not taken damaged. Where the view of a witness was that the land north of the highway was not damaged we think he should have· been permitted to testify to that fact, so that the jury might have the benefit of his testimony in determining whether any compensation should be awarded on account of depreciation in the value of land lying on that side of the highway.

Complaint is also made because the court sustained an objection to the following cross-question propounded to one of respondents' witnesses: "Why do you say the damage was $50 an acre rather than $40, $60 or $75?" This witness had already stated the elements of damage to the land not taken as he deemed them to exist as a basis for the opinion he had expressed, and the court sustained the objection upon the theory that having done this he had already answered the question. Counsel insist, however, that the purpose of this question° was to ascertain "what was the effect of these elements of damage on the market price." When the witness stated $50 an acre he had given his judgment of the effect. It would have been proper to cross-examine him in regard to his knowledge of the value of farm land and of the effect upon that value of extending a railroad across the farm, for the purpose of testing his knowledge and his qualifications as a witness, but we think the objection to the question now under consideration was properly sustained.

Petitioner asked thirty-seven instructions. Objection is made to the action of the court in refusing thirteen of these and in given four of those given at the request of the respondents. Of those refused, the twenty-fourth, twenty-sixth, twenty-seventh, twenty-eighth, thirtieth, thirty-second, thirty-third and thirty-fourth state propositions that are found in other instructions given, and their refusal therefore was proper. The twenty-ninth attempted to state that the jury should not discriminate

against the petitioner on account of the fact that it was a railway corporation. The language used was misleading and the instruction rightfully refused for that reason. The thirty-first would have advised the jury that the purposes for which the land is adapted or may be used are immaterial, unless such purposes actually affect the present cash value of the property. The thirty-fifth was, in substance, that the danger to persons crossing and re-crossing the proposed tracks is so remote that it does not form a proper basis for the assessment of damages. The thirty-sixth is to the effect that the law requires the petitioner, in the operation of its railroad, to use the most improved contrivances to prevent the escape of fire, and that it would be responsible for damages occasioned through any negligence in that regard, and that the jury, in arriving at their verdict, should not consider any loss or damage that may accrue from such negligence. The thirty-seventh is, that in arriving at their verdict the jury should not average the testimony of the witnesses on the question of land damages and values. These four instructions last discussed, being appellant's instructions 31, 35, 36 and 37, should each have been given.

By appellees' given instructions which are criticised the jury were instructed that they might consider all the facts which contribute to produce damage to the land not taken, if shown by the evidence, and the instructions then enumerate certain things which, if shown by the evidence, the jury may consider. The objections are, (1) that these instructions each amounted to telling the jury that these particular things occasioned damage as a matter of law, while whether or not they did occasion damage was a question of fact to be determined by the jury; and (2) that the instructions single out specific elements of damage, and thereby emphasize and give undue prominence to those particular elements. So far as the first objection is concerned, it is based upon a misapprehen-

sion·of the instructions, as each submits to the jury the question whether the things enumerated would damage the land not taken. A discussion of either objection is fruitless, however, as an instruction of the same character as each of those under consideration, and almost identical in language with one of them, (No. 16,) was held by this court to be a proper statement of the law in each of the three following cases: *Chicago, Peoria and St. Louis Railway Co.* v. *Nix,* 137 Ill. 141, *Chicago, Peoria and St. Louis Railway Co.* v. *Blume,* 137 id. 448, and *Chicago, Peoria and St. Louis Railway Co.* v. *Greiney,* 137 id. 628.

It is unnecessary to determine whether the verdict was excessive in amount.

The judgment of the county court will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*