# Indianapolis and Western Railway Company *v.* Branson et al.

[No. 21,161. Filed January 5, 1909. Rehearing denied June 3, 1909.]

1. **Appeal.**— *Briefs.*— *Bills of Exceptions.*— *Filing.*— *Time of.*— Where the complaint in a case is not questioned, it need not be set out in the brief; and a bill of exceptions presented to the judge within the time allowed, but signed and filed later, is in the record. *Indianapolis, etc., R. Co.* v. *Hill*, 172 Ind. 402, followed. p. 385.

2. **Trial.**—*Instructions.*—*Interurban Railroads.*—*Rights of Way.*—*Appropriation.*—*Damages.*—*Speculative.*—*Negligent Operation of Cars.*—In a proceeding by an interurban railroad company for the appropriation of a right of way, it was erroneous to refuse to instruct that the jury should not consider any dangers attendant upon the landowner's ingress to, and egress from, her land, arising out of any negligence on the part of the company, or of such landowner's family; since uncertain or speculative damages may not be considered in determining the depreciation in the market value of the land appropriated. p. 386.

3. **Interurban Railroads.**—*Eminent Domain.*—*Damages.*—*Negligent Operation.*—Negligence in the operation of an interurban railroad cannot be considered in the assessment of damages for its right of way, but must be recovered in an independent action therefor. p. 388.

4. **Judgment.**— *Damages.*— *Eminent Domain.*— A judgment for damages in an eminent domain proceeding conclusively estops a landowner from claiming any damages which might have been recovered in such proceeding. p. 388.

5. **Interurban Railroads.**—*Rights of Way.*—*Damages.*—*Fences.*— In assessing damages for the appropriation of a right of way for an interurban railroad company, the cost of constructing and maintaining fences along the same cannot be considered, the statute (§5707 Burns 1908, Acts 1903, p. 426, §1) requiring such company to construct and maintain same. p. 389.

6. **Appeal.**—*Rehearing.*—*Questions Presentable.*—Points not presented in appellant's or appellee's original brief cannot be raised on a petition for a rehearing; and new questions suggested in a subsequent brief marked "Additional Points and Authorities" cannot be considered on rehearing. p. 391.

7. **Appeal.**—*Duty of Court to Search Record.*—While the Supreme Court may examine the record for errors, it is not required to do so. p. 392.

8. APPEAL.—*Instructions.*—*Evidence.*—Where a case was reversed
for the refusal of the trial court to give certain instructions, a
rehearing will not be granted on a showing that the instructions
were not in the record, where the same questions necessitating
a reversal also arose upon the introduction of evidence.  p. 393.

From Hendricks Circuit Court;   *T. J. Cofer,* Special
Judge.

Condemnation proceedings by the Indianapolis and West-
ern Railway Company against Rebecca Branson and another.
From a judgment for defendants, plaintiff appeals.   *Re-
versed.*

*Otis E. Gulley, W. H. Latta* and *L. H. Oberreich,* for ap-
pellant.

*Brill & Harvey* and *Samuel Ashby,* for appellees.

JORDAN, C. J.—Appellant is an incorporated electric in-
terurban railway company, seeking to condemn and appro-
priate a right of way for its railroad through Hendricks
county, Indiana.   In fact, this cause arises out of the same
condemnation proceedings involved in the appeal of the *Indi-
anapolis, etc., R. Co.* v. *Hill* (1909), *post,* 402.   Appraisers
were apointed to assess the damages resulting to the defend-
ant Rebecca Branson (one of the appellees herein).   These
appraisers made their report, assessing her damages for the
appropriation of real estate at $500.   She filed exceptions to
this award, and the issue in respect to damages as raised and
tendered by her exceptions was submitted to a jury for trial
at the January term, 1907, of the Hendricks Circuit Court.
After hearing all of the evidence in the case and the instruc-
tions of the court, the jury returned a verdict in her favor,
assessing damages in the sum of $925 for the lands appro-
priated by the railway company for its right of way.   There-
upon said company unsuccessfully moved for a new trial, as-
signing in its motion various reasons therefor.   The court
rendered judgment in favor of defendant Branson for the

Indianapolis, etc., R. Co. *v.* Branson—172 Ind. 383.

amount of damages assessed by the jury. The railway company appeals, and assigns as error the overruling of its motion for a new trial. Counsel for appellees interpose virtually the same objections and criticisms in respect to appellant's brief and the record in this appeal as they presented and urged in the case of *Indianapolis, etc., R. Co.* v. *Hill, supra.* For the reasons stated in the decision in the latter case, these objections are overruled.

The court on its own motion gave ten instructions to the jury. Appellant's counsel, at the proper time, tendered to the court, with a request to give the same to the jury, five instructions. The court refused each of these instructions, to which ruling appellant excepted.

The evidence in the case establishes, among others, the following facts: On the south side of appellees' farm, which embraces seventy-seven acres, and out of which lands appellant's right of way is appropriated, there is a public highway running east and west. Between this highway and the south line of the farm is located the right of way of the Vandalia Railroad Company, over which said company has for many years propelled by steam both passenger- and freight-cars. The dwelling-house of appellee Branson, wherein she and her husband and the members of her family reside, is about two hundred feet north of the line of appellant's railway. The strip of land appropriated is sixty feet wide, and runs east and west, adjacent to and parallel with the Vandalia railroad. Said appellee and the members of her family, in order to reach the highway on the south side of the farm, are compelled to cross appellant's right of way and also the Vandalia railroad. There is a private crossing over the latter road which appellees maintain and use for the purpose of crossing over the latter road.

Evidence, over the objections of appellant, appears to have been given at the trial by appellee Branson showing how far distant from the before-mentioned crossing trains and cars

could be seen approaching, not only over appellant's road, but also over the road of the Vandalia Railroad Company, and how close a train could be to a person before it could be seen by such person. It was also shown that appellee Branson and the members of her family used this crossing many times during each day. Manifestly this evidence was given for no other purpose than to show the danger to which said appellee and the members of her family would be exposed by an approaching car or cars while crossing over the track of appellant's road in going to and coming from the public highway.

By instruction two appellant requested the court to advise the jury to the effect that, in assessing damages, if any, to the residue of appellees' land, it would not be 2. warranted in taking into consideration any danger attendant upon ingress to or egress from said land, arising out of any negligence on the part of appellant company or of the appellees. The court refused so to instruct. No instruction given by the court referred to or advised the jury upon this proposition. In view of the evidence given on behalf of appellees, we are of the opinion that the court erred in its refusal so to advise the jury. It is provided by clause three of section six of the act of 1905 (Acts 1905, p. 59, §934 Burns 1908), which deals with the assessment of damages, that the appraisers, among other things, shall determine and report "the damages to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated." The provision of section six of the statute is that it is not only the value of the land sought to be appropriated which is to be determined, but also the damages to the remainder of the particular tract of land caused by the taking of the part appropriated, or, in other words, the inquiry is in regard to the actual depreciation of the market value of the land not taken, caused by the carving out thereof of the portion actually appropriated. In determining the question of the depreciation of the market

value of the residue of the land, the jury must be confined to the consideration of proper evidence. It will not be permitted to anticipate damages of any character which will not certainly, but only possibly, result in the future from the appropriation of the land for the railroad. It is well affirmed by the authorities that damages which may in the future arise from the happening of some possible but uncertain event cannot be considered. These are too remote, speculative and uncertain, and may be said to rest upon mere conjecture. Such uncertain or speculative matters are not proper to go to the jury as evidence relative to the depreciation of the market value of the remaining lands. Neither do they afford a proper basis for a witness to take into consideration in forming his opinion upon such depreciation. To this class of speculative, uncertain and remote damages may be assigned the danger to which the owner of the remaining land and the members of his family may be exposed in crossing the tracks of the railroad located upon the right of way condemned. Such danger is said to rest upon the negligence of the company in the future operation of its trains over the right of way in controversy. It cannot be assumed that the railroad company will, in the future operation of its road and the cars thereover, be guilty of such negligence as will result in personal injury to the owner of the land or to any member of his family. The principles or rules which sustain the propositions are well settled. *Chicago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213; *Indianapolis, etc., Traction Co.* v. *Larrabee* (1907), 168 Ind. 237, 10 L. R. A. (N. S.) 1003, and authorities cited; *Indianapolis, etc., R. Co.* v. *Hill, supra; Conness* v. *Indiana, etc., R. Co.* (1901), 193 Ill. 464, 62 N. E. 221; *Chicago, etc., Electric R. Co.* v. *Mawman* (1903), 206 Ill. 182, 69 N. E. 66; *Illinois, etc., R. Co.* v. *Freeman* (1904), 210 Ill. 270, 71 N. E. 444; *Chicago, etc., R. Co.* v. *Nolin* (1906), 221 Ill. 367, 77 N. E. 435; *Neilson* v. *Chicago, etc., R. Co.* (1883), 58 Wis. 516, 17 N. W. 310, and authorities there cited; *Lyon* v. *Green Bay, etc., R. Co.*

(1877), 42 Wis. 538; *Montana R. Co.* v. *Freeser* (1903), 29 Mont. 210, 74 Pac. 407; 2 Elliott, Railroads (2d ed.), §§991, 991a, 991b; 2 Lewis, Eminent Domain (2d ed.), §482.

In *Neilson* v. *Chicago, etc., R. Co., supra,* the court upon this question, quoted from *Hutchinson* v. *Chicago, etc., R. Co.* (1875), 37 Wis. 582, as follows: " 'Witnesses may testify to depreciation and be permitted to state the grounds of their opinion, as in *Snyder* v. *Western Union R. Co.* [1869], 25 Wis. 62, but evidence of remote and conjectural cause of depreciation should not be submitted to the jury as a basis for their assessment of damages.' " The general presumption is that the railroad will be constructed and operated in a proper manner, and upon this presumption the actual effects upon the remaining lands should control the assessment of damages. In case the road is improperly constructed by the railroad company, or is in the future negligently operated, to the injury of the landowner, then the law affords him an ample remedy for the recovery of damages resulting from such injury, notwithstanding the award made in the original condemnation proceedings. It is true, as the authorities affirm, that damages are assessed "once for all," and all legitimate damages resulting from the appropriation of the land should be included in the original award or assessment, for such assessment is conclusively presumed to embrace damages for every injury which could have been legally included in the appraisal made by the appraisers or the assessment made by the jury, and it will operate to bar a recovery by the landowner of any damages which should and could have been legally included therein. *Chicago, etc., R. Co.* v. *Hunter, supra; Lyon* v. *Green Bay, etc., R. Co., supra;* 2 Elliott, Railroads (2d ed.), §1004; *White* v. *Chicago, etc., R. Co.* (1890), 122 Ind. 317, 7 L. R. A. 257, and authorities cited; 4 Sutherland, Damages (3d ed.), §1072. It follows that the

court erred in not charging the jury as requested by appellant in instruction two.

Appellant, by instruction three, asked the court to charge the jury, in effect, that the law of this State casts upon the railroad company the duty of constructing and maintaining a good and substantial fence along the line between its right of way and the defendant's land; that the jury should not take into consideration, in assessing the defendant's damages, "the cost of a permanent fence along the north line of the right of way of plaintiff's railway." There is evidence in the case to which this instruction was applicable. By the act of 1903 (Acts 1903, p. 426, §1, §5707 Burns 1908) it is provided: "That any corporation, lessee, * * * owning, controlling or operating, * * * any interurban railroad, traction line, or suburban railway within the State of Indiana, using electricity for a motive power, * * * shall within one year from the taking effect of this act, as to those already constructed, and as to those hereafter constructed within one year from the date of the completion of any part of such line and putting the same in operation, erect, build, construct and thereafter maintain fences on both sides throughout the entire length of such road completed * * * sufficient and suitable to turn and prevent cattle, horses, mules, sheep, hogs or other stock from getting on such road, except at crossings." It is further provided that "when such fences and cattle-guards are not made as herein provided, or when such fence or cattle-guards are not kept in repair, such railroad corporation or persons operating the same shall be liable for all damages which may be done by the agents, employes, servants or cars of such corporation, or persons operating the same, to any such cattle, horses, sheep, hogs or other stock thereon." By §5708 Burns 1908, Acts 1903, p. 426, §2, provision is made that, in case such corporation neglects or refuses to construct such fence, barriers or cattle-guards

the landowner is given the right to construct the same and recover from the corporation or person operating the road a reasonable compensation therefor. Section 5712 Burns 1908, Acts 1903, p. 426, §6, provides that "when such railroad is fenced on one or both sides at the point where such way is constructed such abutting landowner shall erect and maintain substantial gates in the line of such fence or fences across such way, and keep the same securely fastened and closed when not in use by himself or his employes."

In view of the provisions of the statute, the cost of building permanent fences along the sides of appellant's railroad would not constitute an element of damages to be considered by the jury in making the assessment. In fact, this is the prevailing rule in states wherein the railroad company is by statute required to fence its right of way. It will be presumed that the railroad company, within the time provided, will comply with the requirements of the law, therefore, under the circumstances in this case, the jurors should have been advised by the court that the cost of building fences along the sides of appellant's railroad, after the expiration of the time allowed by the statute, should not be taken into consideration by them, or included in the assessment of damages. 2 Elliott, Railroads (2d ed.), §996; *Chicago, etc., R. Co.* v. *Baker* (1890), 102 Mo. 553, 15 S. W. 64; *St. Joseph, etc., R. Co.* v. *Shambaugh* (1891), 106 Mo. 557, 17 S. W. 581; *Winona, etc., R. Co.* v. *Waldron* (1866), 11 Minn. 515, 88 Am. Dec. 100; *Jones* v. *Chicago, etc., R. Co.* (1873), 68 Ill. 380; 4 Sutherland, Damages (3d ed.), §1072; 2 Lewis, Eminent Domain (2d ed.), §498; Mills, Eminent Domain (2d ed.), §212.

For the error of the court in refusing to charge as requested by appellant in its instructions two and three, the judgment is reversed and a new trial ordered.

Hadley, J., not participating.

Indianapolis, etc., R. Co. *v.* Branson—172 Ind. 383.

## ON PETITION FOR REHEARING.

JORDAN, J.—Appellees petition for a rehearing, on the ground that the instructions in this case are not properly in the record, and therefore the court should not have considered instructions two and three refused by the trial court, for which refusal the judgment was reversed. Counsel for appellees do not claim that these two charges, as requested by appellant and refused by the lower court, were not correct, nor do they, in their brief upon the petition for a rehearing, advance any reason to show that appellant was not entitled to have the instructions in question given to the jury, but their sole contention is that the record does not disclose that the instructions refused were ever filed with the clerk of the lower court. The point in regard to their filing was in no manner raised by appellees' counsel in their original brief filed on April 11, 1908. The only adverse criticism made in this brief against the instructions asked by appellant and refused by the court was that appellant's brief did not disclose that they were signed by its counsel.

The rule is well settled that a point not presented 6. for decision by a party upon appeal in his original brief will not be considered by this court in determining whether a petition for rehearing should be granted. Such a petition can be based only on points that were properly presented for decision at the original hearing. Ewbank's Manual, §242, and authorities cited; Elliott, App. Proc., §§556, 557; Rules 22 and 23 of this court.

It is true, as appellees claim, that in a document indorsed "Additional Points and Authorities," filed on September 5, 1908, under the authority of rule twenty-one of this court, a statement is made that the instructions given and those refused were not filed with the clerk. Said rule twenty-one after providing for the filing of original briefs by an appellant and appellee and the reply brief on the part of appellant, then expressly declares that "no supplemental or ad-

ditional briefs by either party will be received. Further citation of authorities in support of any proposition stated in the briefs may be filed by either party at any time without comment or argument.'' Under this latter provision appellees could not for the first time raise the question that the instructions in controversy were not properly in the record. *Consumers Paper Co.* v. *Eyer* (1903), 160 Ind. 424, 427; *Malott* v. *State, ex rel.* (1902), 158 Ind. 678; *Gates* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 338; *Underwood* v. *Sample* (1880), 70 Ind. 446.

In the case last cited appellee based his petition for a rehearing upon the ground that the bill of exceptions upon its face disclosed that all of the evidence was not in the record. In considering the petition for a rehearing this court said: ''The objection thus urged to the bill of exceptions was not made, or in any manner referred to, by the appellee in his original brief, and is for the first time now presented by his petition for a rehearing. By the well-established practice of this court, the objection comes too late. We cannot now be called upon to reopen the cause for the purpose of inquiring whether there may not have been some defect in the record, of which the appellee might have availed himself, when he filed his original brief, but did not. The appellee is as much bound to present, in the first instance, all the questions relied upon by him, as is the appellant, and his failure to do so operates in the same way, against him, upon his application for a rehearing.''

Counsel for appellees apparently assume that it was the duty of this court, on its own motion, to search the record in this appeal in order to discover whether instructions in the case were properly in the record. But appellee Branson, in her original brief, treated the instructions in question as being properly before us for consideration, hence we were not required to search the record in order to discover the contrary. While it is true that upon points apparent upon the record in a case appealed to this

court, which will prevent a reversal of the judgment of the trial court, we may, in the exercise of our discretion, give an appellee the benefit thereof, although he has omitted in any manner to refer to or present such points in his brief, nevertheless the searching of the record by this court on its own motion, in order to ascertain if there is some point in the case or defect in the record which will obviate a reversal of the judgment, is a matter wholly optional with the court, and can neither be demanded nor relied upon by an appellee who has neglected to present the point in his original brief.

Conceding, without deciding, that the instructions in question are not properly in the record, nevertheless to grant appellees a rehearing would not better their present condition, for it appears that the point upon which the judgment was reversed was not alone presented by appellant under instruction two, as refused, but also by objections made by it to the introduction of certain evidence by appellees. Consequently, upon another hearing, a reversal would necessarily follow, because of the error of the lower court in admitting the evidence in question.

Petition for rehearing overruled.