STATE OF INDIANA *v.* CITY OF TERRE HAUTE,
A MUNICIPAL CORP.

[No. 31,003. Filed July 1, 1968.]

614

*John J. Dillon*, Attorney General, *Ronald S. Timmons* and *Charles J. Deiter*, Deputy Attorney Generals, for appellant.

*Frank P. Crawford*, City Attorney, City of Terre Haute, Indiana, for appellee.

LEWIS, C. J.—This is an appeal from the judgment of the Vigo Superior Court in a proceeding brought by the State of Indiana to appropriate two (2) parcels of real estate in which the City of Terre Haute had an interest for the purpose of constructing Interstate Highway I-70.

In 1946 the City of Terre Haute received a mandate from the State of Indiana to cease and desist from polluting the Wabash River. This required the City of Terre Haute to construct a sewage disposal system for the City's use. A Boston, Massachusetts, consulting engineering firm was retained and it commenced to study the situation with the original plans being developed by it in the period of 1951 to 1953.

On September 11, 1961, the State of Indiana filed this condemnation against the City of Terre Haute for a right-of-way over parts of two (2) tracts of land. One tract comprising 31.98 acres was owned outright by the City, and on the other tract of 7½ acres, the City had a claimed option to purchase. These tracts were adjacent to one another and it was on these tracts that the City had planned to build its sewage disposal plant.

After several meetings between the Mayor of Terre Haute and the State Highway Commission in an attempt to select and agree on an alternate route, it was decided that the Highway, I-70, would be built as previously planned and that the site of the proposed sewage disposal plant must be moved to another near-by property.

Although no actual construction had begun on the project and the land remained unchanged, the condemnation was responsible for generating additional costs to the City of Terre Haute. In its plea for damages the City specifically alleged the following items:

A. As a result of the structure being moved to a different site the plans had to be revised which required the City of Terre Haute to pay out additional engineering fees.

B. A water main had to be extended approximately 2300 feet and at an increased diameter.

C. The new route of the water main was blocked by a bridge foundation for an I-70 overpass which necessitated two (2) forty-five degree bends in the main to go around the preliminary bridge foundation at additional cost.

D. In laying the water main along the new route, the City of Terre Haute had to obtain permits from the State Highway Department and had to pay the required fees.

E. The total value of the land actually taken.

Evidence relevant to these items of damages was admitted by the Trial Court over valid objections by opposing counsel. The jury returned a verdict for the City of Terre Haute in the sum of $94,330. From this verdict the State of Indiana appeals to this Court raising the following errors:

1. That the Trial Court erroneously redocketed the case in the Vigo Circuit Court after having granted the State of Indiana a change of venue.

2. The Trial Court allowed evidence to be considered by the jury that was inadmissible under the law of eminent domain and outside the scope of the issues of the lawsuit; in other words, evidence as to damages which are not compensable under the Eminent Domain Statute.

Concerning appellant's second assigned error, the pertinent Indiana Statute, Burns' Indiana Stat., Anno., (1968 Repl.), § 3-1706, reads as follows:

"Such appraisers shall take an oath that they have no interest in the matter and that they will honestly and impartially make such assessment. After being so sworn, the judge shall instruct said appraisers as to their duties as such and the measure of the damages and benefits if any they allow.
They shall determine and report:

First. The fair market value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

Second. The fair market value of all improvements pertaining to the realty, if any, on the portion of the real estate to be condemned;

Third. The damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

Fourth. Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff.

Fifth. In case the land is sought to be taken by the state or by a county, for a public highway or by a municipal corporation for a public use that confers benefits on any lands of the owner, the report shall also state the benefits which will accrue to each parcel of property, set opposite each description of the same, whether described in the complaint or not. In estimating the damages specified in the foregoing first, second, third and fourth clauses, no deduction shall be made for any benefits that may result from such improvement, excepting in case of a condemnation by the state or by a county, for a public highway or by a municipal corporation for public use, the benefits, if any assessed, shall be deducted from the amount of damage allowed, if any, under the foregoing third and fourth clauses; and the difference, if any, plus the damages allowed under the foregoing first and second clauses shall be the amount of the award, but in no case shall the damage awarded be less than the damages allowed under the foregoing first and second clauses. Upon the trial of exceptions to such award by either party a like measure of damages shall be followed. For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of the notice provided in section

three [§ 3-1703], and its actual value, at that date, shall be the measure of compensation for all property to be actually taken and the basis of damages to property not actually taken but injuriously affected, except as to the damages stated in the fourth clause hereof."

The problem now manifests itself: Which items of the alleged damages are compensable under the Indiana condemnation procedure? It is well settled in Indiana that when land is taken which has a fair market value at the time of its appropriation, the measure of damages is the fair market value for which the land could be sold if the owner was willing to sell. If the land has a higher market value by reason of use or uses to which it may be adapted, but to which it has not been put, the owner is entitled to the greater value. *State* v. *Tibbles* (1954), 234 Ind. 47, 123 N. E. 2d 170. On this the law is agreed; however, *State* v. *Tibbles, supra,* goes on to say that the fair market value of the land taken is all that may be recovered by the condemnee. Whether this is applicable in the case at bar is what we must now decide.

In *State* v. *Ensley* (1960), 240 Ind. 472, 164 N. E. 2d 342, the condemnee had business property which abutted a thoroughfare; he sought damages for the land actually taken which was granted, but he also sought to receive compensation because a divider strip was constructed between lanes thereby affecting ingress and egress to his business establishment. This Court stated:

"Paragraph Fourth of § 3-1706, *supra,* of the Eminent Domain Act has broadened the common law conception of 'just compensation' and by implication has included other elements of condemnation besides the actual 'taking' of the physical property itself. However, the cases which have considered the application of paragraph Fourth of § 3-1706, *supra,* have inherent limitations which may be implied from the respective facts involved in each of them."

Recovery was denied with this Court stating:

"In order to recover for the alleged impairment of their

right of access appellees must suffer a particular private injury, and not merely an inconvenience or annoyance, even though it may be greater in degree than such as is suffered by the public generally. . . ."

From this case we may draw the conclusion that this Court will allow damages in addition to the fair market value of the land actually taken, but only where the facts in a particular case justify it.

In *State* v. *Jordan* (1966), 247 Ind. 361, 215 N. E. 2d 32, a limited-access expressway was constructed which greatly hampered ingress and egress to the appellant's business parking lot. The parking lot was "leased" from another party; however, this Court found that the agreement between the lessor and lessee was too vague to constitute a leasehold interest in the land. The Court made the following statement:

"It therefore follows that either some physical part of the real estate must be taken from the owner or lessor, or some substantial right attached to the use of the real estate taken before any basis for compensable damage may be obtained by an owner of real estate in an eminent domain proceeding. It must be special and peculiar to the real estate and not some general inconvenience suffered alike by the public."

With the above statement in mind, the case of *State* v. *Geiger & Peters, Inc.* (1964), 245 Ind. 143, 196 N. E. 2d 740, will be examined. The appellant owned a business which fronted on a limited-access expressway. The construction of the expressway greatly hampered the ingress and egress of his customers. This Court granted compensation saying:

". . . Appellant has, by the erection of a fence and barricade and the construction of an embankment, cut appellees off from the highway known as Madison Avenue. Appellant cannot equate appellees' previous right of access to old Madison Avenue which led to the north and south through the entire city of Indianapolis, with access solely to the narrow dead-end service road which leads nowhere to the north and nowhere to the south except to Caven Street. Whether appellant calls the dead-end service road old Madi-

son Avenue or not, in reality it is not the highway to which appellees previously had access. The injury to appellees is special and peculiar and is different in this case from that sustained by the public at large. The construction work done on old Madison Avenue and the land immediately west thereof to make a new super highway out of old Madison Avenue, and the creating of obstructions and embankments cutting off appellees' right of ingress and egress to and from the highway, was a taking of appellees' property rights for which they were entitled to compensation in eminent domain."

Compensation was given other than the fair market value of the land actually taken in this case based on the condemnee's being deprived of a present use. This case recognizes that in some situations fair market value of the land taken is not an adequate measure of damages.

*State* v. *Tibbles, supra,* provides us with some guidelines in ascertaining what damages, beyond those attributable to the fair market value of the land taken, are compensable. In this case the land condemned was intended to be used by the condemnee as a lct on which to display and sell house trailers. However, this was a future intended use and was not *in esse.* This Court stated:

"It has long been the established rule that in determining the value of the property taken by condemnation or appropriation the availability and adaptability of property for uses other than that to which it is applied at the time of taking, so far as it may appear from the evidence, may be taken into consideration, but inquiry as to damages cannot go into an intended specific use. . . ."

"'. . . The question for trial related to the appellant's damages, considering his land at the time the highway should be established. Such damages were not to be ascertained by inquiring into the use to which the appellant intended to put his land, but by considering it with reference to its use and condition at the time, and by inquiring as to what extent, if at all, the highway would affect its market value.' " *State* v. *Tibbles et al., supra,* quoting with authority from *Goodwine* v. *Evans et al.* (1893), 134 Ind. 262, 33 N. E. 1031.

Therefore, we conclude from this case that one may not recover for damages for intended use to arise in the future.

After a search of Indiana law we can find no Indiana cases which deal with the factual situation which presents itself here. However, a search of other jurisdictions produced the following cases. In *City of Chicago* v. *Provus* (1953), 415 Ill. 618, 114 N. E. 2d 793, the appellees owned a tract of land in Chicago. They intended to build an apartment complex on the premises. However, the City of Chicago condemned a right of way through it thereby frustrating the appellees in their future plans. The appellees had already expended monies for architectural fees, and F. H. A. appraisals, and sought to set them off as damages against the condemnor. In denying their claim for these damages the Supreme Court of Illinois stated:

> "It has long been established by this court that the measure of compensation for land taken by eminent domain is the fair cash market value for the highest and best use to which it is available and the decrease, if any, in the fair cash market value of the part not taken. . . . The market value standard thus established precludes taking into consideration as a measure of damages the peculiar value to the owner because of some contemplated improvement by which he hoped to secure an income or profit. . . . Since the outlay of capital for future use planning and financing of improvements to vacant land cannot be said to increase the market value thereof, such outlay comes within the exclusion and should not be considered in ascertaining the fair cash market value."

However, as previously stated, the Indiana law allows damages in addition to the fair cash market value of the land actually taken. The State of New York has chosen to treat a similar problem differently in *Application of Westchester County* (1953), 127 N. Y. S. 2d 24. Here, as well, the appellants were planning to build an apartment complex on a given parcel of land, part of which was condemned and taken by the County of Westchester to acquire lands for a parkway

or boulevard. They had, previous to the condemnation, expended monies for architectural fees and F. H. A. appraisals. The Supreme Court of New York deviated from the strict fair cash market value standard and allowed partial recovery by stating:

"There is no proof of any consequential damages to the remainder of the premises by reason of the taking or by reason of the use to which the subject parcel is to be put by the County, so none is allowed. However, in addition to receiving the difference between the before and after values above noted, the respondents, in the opinion of the court, are entitled to be compensated for that portion of their expenses, reasonable in amount, as may be found to have been incurred and paid by them in connection with the proposed development of the subject parcel as part of the original tract. These expenses consist of fees of engineers and architects for that portion of the surveys and plans *as related solely to the subject parcel and the proposed buildings thereon;* the fees of test borers for test borings *on the subject parcel;* and such proportion of attorneys' fees incurred in connection with the originally proposed development *as may be found to be fairly allocable to the subject parcel.* These expenses, found by the court to amount to $7,500, were actually incurred in good faith prior to the taking and *relate directly to parcel taken.* . . . Such expenses having to do with the proposed development of the subject parcel and incurred prior to the taking thereof are clearly in a different category than the disallowed expenses and losses alleged to have been sustained by the respondents in the matter of the change of plans occurring by reason of the severance and in the matter of the completion of the development without the use of the subject parcel. Such particular expenses were not taken into consideration in fixing the values above mentioned, and the amount of the respondents' loss in connection therewith would not be recovered unless they be allowed as a separate item of damage. . . ."

We are impressed with this case. While we may not award damages for a future intended use, the plans and designs of the consulting engineering firm purchased by the City were *in esse* at the time the land was taken. These plans were fairly allocable to the subject parcel, and the expenses were incurred in good faith prior to the taking. While

these expenditures did not enchance the cash fair market value of the land taken, they were attached to it as though they were an actual physical improvement. From the planning to the actual construction of a physical structure is a series of continuing stages of development. It would be inequitable to allow recovery for a partially completed building, but not to allow recovery for expenses incurred in a previous stage of development. Therefore the appellee should be compensated for the damages sustained by it in regard to the planning and engineering work actually performed before the day of taking. Evidence should be elicited at trial in order to ascertain what these damages are.

However, the other expenses for which the appellee seeks compensation arose in the future after the day of the taking and are not the proper subject for compensation under our eminent domain statute.

In *United States ex rel. T. V. A.* v. *Powelson* (1942), 87 L. ed. 1390, 319 U. S. 266, the following statement appears:

"This public project, to be sure, has frustrated respondent's plan for exploitation of its power of eminent domain. We may assume that that privilege was a thing of value and that this frustration of the plan means a loss to respondent. But our denial of compensation for that loss does not make this an exceptional case in the law of eminent domain. There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment. The point is well illustrated by two other lines of cases in this field. It is a well settled rule that while it is the owner's loss, not the taker's gain, which is the measure of compensation for the property taken (*United States* v. *Miller,* 317 U. S. 369, ante, 251, 63 S. Ct. 276, *supra, United States* v. *Chandler-Dunbar Water Power Co. supra* (229 U. S. 81, 57 L. ed. 1082, 33 S. Ct. 667) ; *Boston Chamber of Commerce* v. *Boston,* 217 U. S. 189, 195, 54 L. ed. 725, 727, 30 S. Ct. 459), not all losses suffered by the owner are compensable under the Fifth Amendment. In absence of a statutory mandate (*United States* v. *Miller, supra,* (317 U. S. 370, ante, 341, 63 S. Ct. 276, 147 A.L.R. 55)), the sovereign must pay only for what it takes, not

for opportunities which the owner may lose. See Orgel, Valuation Under Eminent Domain 1936, § 71, § 73. . . ."

Therefore, the damages sustained by the appellee to the engineering and plans which were *in esse* at the time of the taking are proper matters on which evidence may be heard at trial. However, evidence admitted as to other elements of damages concerning the extension of the water main, the increased diameter of the water main, the bends around the bridge foundation, and the highway permits, was all inadmissible since such matters are not of the proper subject matter to be compensated for by the State of Indiana.

The appellant's first assigned error also poses to this Court an issue which we deem worthy of clarification. On October 9, 1961, the State of Indiana filed its motion for a change of venue from the county, with the motion being granted on the same day. Following this order, the parties then struck counties, and on October 13, 1961, the cause was ordered venued to Sullivan County with the State being given ten (10) days to perfect its change. The State took no further action to perfect such change.

On February 24, 1964, the Vigo Superior Court ordered the cause redocketed in said Court on the grounds that the State had failed to perfect the change. Under Burns' Indiana Statutes, Anno., (1967 Repl.), § 2-1406, after the motion has been granted, the moving party must pay the costs of the change to the Clerk's Office. Upon receipt of this payment, the Clerk's Office transfers the cause to the appropriate Court, and the change is perfected.

It is the appellant's contention that the State is not liable for these costs payable to the Clerk since the State is exempt under Burns' Indiana Statutes, Anno., (1968 Repl.), § 2-3005. See also *Ex Parte Fitzpatrick* (1909), 171 Ind. 557, 86 N. E. 964.

Therefore, since Burns' § 2-3005, *supra,* only requires the payment of these costs to perfect the change, and since the

State is not liable for these costs; the change was automatically perfected on October 13, 1961, when the Court ordered the cause venued to Sullivan County.

We agree with the appellant in its statement that in highway condemnation proceedings, the State is not liable for ordinary Court costs, thereby exempting the State from paying the Clerk of the Vigo Superior Court. However, we cannot agree with the appellant in its conclusion that the change in this cause was perfected. After a thorough search we have found no Indiana case deciding this issue.

However, the costs that are referred to in § 2-1406, Burns' Indiana Statutes, Anno., (1967 Repl.), are the costs that are occasioned by the change. The statute placed the burden on the moving party to pay such costs. The payment of the costs to the Clerk of the Court is notice to the Clerk of the Court to prepare the transcript and forward the same to the Clerk of the proper county. In view of the fact that the State of Indiana is excused from paying such costs we cannot believe that the State is excused from notifying the Clerk in some manner to prepare the transcript sans costs and to forward the same to the proper county. As the State of Indiana is the moving party it would hardly seem reasonable to expect the Clerk, without some notice from the moving party, to prepare the transcript and forward the same. And, in view of the fact that the State is relieved from making the disbursement for costs, the State's counsel should, by proper notice of praecipe (or other notice) notify the Clerk to complete the administrative functions of preparing the transcript and forwarding the same.

In the case at bar the record is devoid of any affirmative action taken by the State of Indiana to inform the Clerk to proceed to prepare a transcript and forward the same. The early case of *Cooper et ux.* v. *The Arctic Ditchers* (1877), 56 Ind. 233, discusses change of venue and the duties involved on the moving party and the Clerk. In the

case at bar since the attorneys for the State of Indiana failed to notify the Clerk in any manner within the time limit prescribed for perfecting the change, we conclude that the State has failed to demonstrate error on the part of the Court in redocketing this matter.

Since the Court committed reversible error in admitting improper evidence, we must reverse and order a new trial not inconsistent with this opinion.

Arterburn, Hunter and Jackson, JJ., concur; Mote, J., not participating.

NOTE.—Reported in 238 N. E. 2d 459.