**CITY OF ELKHART, Indiana,**
**Plaintiff-Appellant,**

v.

**NO–BI CORPORATION,**
**Defendant-Appellee.**

No. 3–681A153.

Court of Appeals of Indiana,
Third District.

Nov. 23, 1981.

Rehearing Denied Jan. 7, 1982.

Darrell J. Hiatt, Asst. City Atty., Elkhart, for plaintiff-appellant.

Geoffrey K. Church, Church, Warrick, Weaver, Boyn & Nilsson, Elkhart, for defendant-appellee.

HOFFMAN, Presiding Judge.

Plaintiff City of Elkhart (City) appeals a trial court award of damages in a condemnation proceeding to defendant No-Bi Corporation (No-Bi). The following issues are presented:

(1) whether there was sufficient evidence to support the trial court award;

(2) whether the trial court erred by permitting No-Bi's expert witness to testify as to damages suffered by No-Bi;

(3) whether the trial court erred by admitting evidence which was speculative;

(4) whether the trial court erred by admitting evidence regarding an intended specific future use of No-Bi's property;

(5) whether the trial court erred by considering occurrences which took place after the taking; and

(6) whether the trial court erred by awarding attorney fees and costs to No-Bi.

On June 28, 1978 the City of Elkhart filed a complaint for condemnation of real estate naming No-Bi Corporation as the defendant. The basis for the complaint was a request for the trial court to assess damages due No-Bi as a result of the widening of the street fronting No-Bi's property. At the time of the taking and the later hearing, No-Bi used its property for a warehouse business.

Pursuant to IC 1971, 32–11–1–4 (Burns 1980 Repl.), the trial court appointed appraisers to estimate the damages due No-Bi. The appraisers' report was filed stating that no net damages resulted from the taking. No-Bi noted its exceptions to the report based on the contention that prior to the taking large trucks having business at

the No-Bi facility were able to back into the front loading dock of No-Bi's warehouse without any trouble whereas following the taking such trucks could only back into the loading dock after pulling out into the street in front of No-Bi's warehouse.

On January 21, 1981 a trial was held during which both parties presented expert testimony. The City's expert testified that the value of the land taken by the City was $294, and that No-Bi suffered no net damages to the residue of its property because of the benefits accruing to it as a result of the widening of the street. No-Bi's expert, on the other hand, opined that besides the value of the land actually taken, No-Bi suffered residue damages of $49,630 due mainly to the cost of remodeling its warehouse in order to permit large trucks free access to No-Bi's loading facilities. No-Bi's expert also stated that the widening of the street offered no special benefit to No-Bi. On January 22, 1981 the trial court awarded No-Bi $25,000 in damages including $294 for land taken; $27,706 for damages to the residue; and $3,000 credited as benefit to No-Bi's property. The trial court also awarded No-Bi $2,500 in attorney fees in addition to court costs.

The City's first argument focuses on the sufficiency of the evidence supporting the trial court's award. In this respect, it has been held that a trial court award of damages in an eminent domain proceeding will be affirmed where that award is within the bounds of the probative evidence adduced at trial. *City of Indianapolis v. Schmid et al.* (1968), 251 Ind. 147, 240 N.E.2d 66. On review of such an award, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses. The evidence will be looked at in a light most favorable to the judgment. *City of Inpls. v. Heeter et al.* (1976), 171 Ind.App. 119, 355 N.E.2d 429.

Where an award is made for a partial taking, as has occurred in this case, full compensation equals the fair market value of the land taken plus the value of any damages to the residue. *Unger v. Ind. & Mich. Elec. Co.* (1981), Ind.App., 420 N.E.2d 1250; *see* IC 1971, 32–11–1–6. An owner whose land is taken in an eminent domain proceeding may be compensated for every element of damage that will naturally and ordinarily result from a taking. *State v. Ahaus* (1945), 223 Ind. 629, 63 N.E.2d 199. One type of such damage may be the cost to cure any defects caused by the taking. *See State v. Church of The Nazarene et al.* (1978), 268 Ind. 523, 377 N.E.2d 607. A properly compensated cost to cure may consist of the cost of remodeling the owner's facility where the taking has resulted in loss of use, total or partial, of a loading dock. *See Betty Corporation v. Commonwealth* (1968), 354 Mass. 312, 237 N.E.2d 26. The evidence in the case at hand was sufficient to support the trial court award.

In the case at hand, the parties stipulated to the fact that, as a result of the widening of the street, certain large trucks are no longer able to back into No-Bi's sunken loading dock without first maneuvering into the city street. The parties further stipulated as to the cost of several options to remedy this problem ranging from $22,-284 to $49,630. At trial, the president of No-Bi testified as to the drawbacks of several of the options and the acceptability of only the most expensive option. This, of course, was countered by the court appraisers' report and testimony by the City's expert witness that the widening of the street resulted in no net damage to the residue of No-Bi's property. All of this evidence taken as a whole and weighed by the trial court was sufficient for the trial court to decide that No-Bi did in fact suffer damage to the residue of its property in the amount of $27,706. As this award is within the bounds of the probative evidence at trial, it will be affirmed.

The appellant's second attack is centered on the testimony of No-Bi's expert witness. The City argues that although No-Bi's expert was a qualified appraiser, he was incompetent to testify due to the fact that he admitted at trial that he had no opinion regarding the fair market value of No-Bi's property before or after the taking.

Since the City apparently maintains that such an opinion is a prerequisite to any testimony by an expert witness in an eminent domain proceeding, it urges that this Court exclude the expert's testimony regarding No-Bi's cost to cure the defects caused by the taking. Additionally, the City argues that it was error to admit testimony by No-Bi's expert because he testified as to legal opinions by stating that a proper measure of damages to the residue in a partial taking may consist in part of the cost to cure defects caused by that taking.

Regardless of the possible merits of the City's arguments as to the admissibility of the testimony challenged here, this Court is bound by Ind.Rules of Procedure, Trial Rule 61 which states in part:

> "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Thus, it has been held that error in admitting evidence in an eminent domain proceeding is harmless if the evidence objected to is merely cumulative of other admissible evidence. *Pub. Ser. Co. of Ind., Inc. v. Levenstein Bros., etc.* (1965), 246 Ind. 520, 207 N.E.2d 202. Here, the City objects to testimony by No-Bi's expert as to the cost required to remodel No-Bi's property. This evidence, however, is merely cumulative of other unchallenged evidence. Prior to trial, the parties stipulated that No-Bi suffered damage to the residue of its property and as to the several costs to cure the defects caused to the residue by the taking. These stipulations were properly admitted into evidence. Since the testimony of No-Bi's expert at issue here is a duplication of other admissible evidence, any error in admitting that testimony is harmless.

The third issue presented by the City is whether the trial court erred in admitting testimony by the president of No-Bi as to possible further widening of the street or the construction of barricades further obstructing access to No-Bi's warehouse. The City, however, fails to point out where in the trial transcript such statements are made. *See* Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). A review of that transcript also fails to elicit the challenged testimony. Hence, no error can be found.

■ The City also challenges the admissibility of certain hypothetical questions asked the City's expert witness. These questions asked whether a determination of the diminution in fair market value of the residue would be affected by the possibility that a guardrail might be constructed on the street curb or the City's right of way bordering No-Bi's property. The expert conceded that such a possibility would affect the market value of the residue. In support of its contention that the trial court should have excluded this evidence as too speculative, the City cites *Indianapolis, etc., R. Co. v. Branson* (1909), 172 Ind. 383, 86 N.E. 834.

In *Branson* a railroad company wished to gain a right of way for tracks across the appellee's property, which right of way would run between the appellee's house and the road used by the appellee. In the trial to determine damages to appellee's property, the appellee sought to introduce evidence of the possibility of negligence on the part of the railroad company that would injure the appellee at some time when the appellee would cross the railroad tracks in the future. The Indiana Supreme Court held that consideration of this evidence for the purpose of determining damages was error:

> "In determining the question of the depreciation of the market value of the residue of the land, the jury must be confined to the consideration or proper evidence. It will not be permitted to anticipate damages of any character which will not certainly, but only possibly, result in the future from the appropriation of the railroad. It is well affirmed by the authorities that damages which may in the future arise from the happening of some possible, but uncertain, event cannot be considered.... It cannot be assumed that the railroad company will, in the future operation of its road and the cars thereover, be guilty of such negligence as will result in personal

injury to the owner of the land or to any member of his family. The principles or rules which sustain the above propositions are well settled."

*Id.*, 172 Ind. at 386–387, 86 N.E. at 835–836.

The doctrine announced in *Branson* was later clarified in *Cleveland, C., C. & St. L. Ry. Co. v. Hadley* (1913), 179 Ind. 429, 101 N.E. 473. In that case, a railroad wished to lower the grade on tracks on which it already had an established right of way. The owner requested damages for the new work even though the railroad had already paid damages to obtain its initial right of way. The Supreme Court held that where there was no limit or stipulation as to the manner of construction of the tracks, the condemning party could construct them in any non-negligent or lawful manner it pleased. Damages are based on "the most injurious mode of construction that is reasonably possible." 101 N.E. at 476. In order for the owner to recover damages for the modification, the owner must show that the original damages were recovered based on a limited mode of construction and that the modification exceeds that limitation. 101 N.E. at 477. Without such evidence it is assumed that damages for the original taking constitute complete compensation:

"The general rule in condemnation proceedings is that all damages, present or prospective, that are the natural or reasonable incident of the improvement to be made or work to be constructed, *not including such as may arise from negligence,* or unskillfulness, or from wrongful act of those engaged in the work, must be assessed. Damages are assessed once for all, and *the future necessities as well as the present needs of the condemnor are to be taken into consideration.*" (Emphasis added.)

*Id.* at 477.

Clearly, the holding in *Hadley* justifies the admission of the evidence challenged here.

Unlike *Branson*, neither hypothetical presented in the case at bar was concerned with the possibility of negligence on the part of the City. Indeed, under *Branson*, compensation cannot be recovered in an eminent domain proceeding for the possibility of negligence. Rather, both questions concerned the possibility of further obstruction of No-Bi's use of its property should the City later modify its construction of the street by adding guardrails. No evidence was presented to show that the damages in this case would be based on limited widening of the street excluding guardrails. As such, it was proper for No-Bi to cross-examine the City's expert witness to determine if his estimate of the depreciation of the fair market value took into account the possibility that the City might later modify its construction of the roadway to include guardrails.

■ The City next urges that the trial court erred by admitting evidence as to the specific future use of the property as a warehouse. The City correctly points out that an owner cannot recover damages for an intended specific use of property to arise in the future. *State v. City of Terre Haute* (1968), 250 Ind. 613, 238 N.E.2d 459. However, this rule applies only to uses not *in esse* at the time of the taking. *Id.*, 250 Ind. at 620, 238 N.E.2d at 463. In the *Terre Haute* case the City planned to build a sewage disposal plant on land condemned by the State. At the time of the taking, the City had already acquired plans and drawings for the plant. The Indiana Supreme Court held that the City could recover damages for the cost of the plans because those expenses were *in esse* at the time of the taking, but it could not recover damages for expenses arising after the taking. *See also State v. Tibbles, et al.* (1954), 234 Ind. 47, 123 N.E.2d 170. In the case at hand, the property is already used as a warehouse. This use is *in esse* and is an intended specific future use only in the sense that it would be used as a warehouse after the taking as well as before. Since the property was used as a warehouse at the time of the taking, any evidence of its future use as a warehouse is not barred as evidence of an intended specific future use.

■ The fifth issue here concerns the following finding of fact made by the trial court:

"That the Defendant is obstructed from free and unfettered use of it's [sic] property as it used it prior to the condemnation by, among other things, the present location of the curb cuts, which obstruction has been known to Plaintiff for over two and one-half years and has not been modified by Plaintiff."

The first portion of this finding simply states that the present location of the curb cuts bordering No-Bi's property contribute to an obstruction of the use of No-Bi's property. The City voices no objection to this conclusion on appeal. Nevertheless, the City objects to the second portion of the finding that the City has known about the obstruction and has ignored it for two and one-half years. Appellant City urges that this finding shows that the trial court considered a dispute between the City and No-Bi in regard to the curb cut location in making its award. As this dispute took place after the taking itself, the City maintains that consideration of that dispute in making the damage award was improper.

It has long been held in Indiana that damages in an eminent domain proceeding must be assessed at the time of the taking. *Cleveland, etc., R. Co. v. Smith* (1912), 177 Ind. 524, 97 N.E. 164. As discussed earlier, it has also been held that a condemnee may be compensated for all present and prospective damages which are the natural and reasonable result of the taking. *Cleveland, C., C. & St. L. Ry. Co. v. Hadley, supra.* Moreover, it has already been held that, where there are no limitations on the mode of construction, damages will be assessed based on a lawful and non-negligent mode of construction most injurious to the condemnee. In this way, the finding of fact under attack here concerned a matter of proper consideration for the trial court.

The finding of fact at issue here is clearly a statement by the trial court that it considered the location of the curb cuts and the fact that those curb cuts had not been changed since the taking. This is no more than saying that the trial court considered the possibility that, in widening its street, the City might not modify the curb cuts

either for some time or at any time. This, in turn, is a statement by the trial court that it based its award on a lawful and proper mode of construction most injurious to the condemnee. There is no evidence of any limitation on the mode of construction, *i. e.*, that the City is obligated to modify the curb cuts to No-Bi's satisfaction. Thus, the possibility that the curb cuts might be modified after much delay or not at all was proper for the court to consider. Whether the court's finding indicates that it based its award in part on some dispute between the City and No-Bi is not clear at all since the court neither stated or inferred that such a dispute even existed.

Finally, the City argues that the trial court erred by awarding attorney fees and costs to No-Bi. However, the City asks this Court only to consider this issue if reversal is obtained on one of the other issues presented. Since this Court does not reverse on any of the other issues presented, this final issue will not be addressed.

Affirmed.

GARRARD and STATON, JJ., concur.