## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. HADLEY ET AL.

### [No. 22,094.   Filed April 18, 1913.]

1. PLEADING.— *Complaint.*— *Supplemental Complaint.*— *Right to File.*—The right to file a supplemental complaint under §408 Burns 1908, §399 R. S. 1881, providing that the court may, on motion, allow supplemental pleadings, rests in the sound discretion of the trial court.   p. 431.

2. PLEADING.—*Supplemental Pleadings.*—*Motion for Leave to File.* —*Form.*—Permission to file a supplemental pleading may be obtained on oral motion, since §662 Burns 1908, Acts 1903 p. 338, §2, providing that every motion to insert new matter or to strike out any part or parts of any pleading, etc., shall be made in writing, has no application to a motion for leave to file a supplemental pleading.   p. 432.

3. PLEADING.— *Complaint.*— *Supplemental Complaint.*— *Theory.*— Where the original complaint in an action for damages caused by the reconstruction of a railroad, filed while the work was in progress, alleged that certain wrongful acts were being committed· and were resulting in certain elements of damage, the theory of the action was not changed by a supplemental complaint which alleged the continuance of the same wrongs, and the completion of the work, and counted upon the same elements of damage as having been fully accomplished.   p. 432.

4. EMINENT DOMAIN.—*Condemnation for Railroad Right of Way.* —*Proceedings.*—*Filing of Map and Profile.*—*Effect.*—Under §5194 Burns 1908, §3902 R. S. 1881, providing that every railroad company, before proceeding to construct a part·of its road into or through any county, shall file a map and profile of the intended route in the office of the clerk of such county, the filing of such profile need not precede the condemnation of land for the right of way; and, since the instrument of appropriation deposited with the clerk pursuant to the provisions of §5236 Burns 1908, §3907 R. S. 1881, and the order to appraisers issued pursuant to such instrument, are alone to be looked to for a description of what is taken and for fixing the basis of assessing the damages, the mere filing of a map and profile in accordance with said §5194 Burns 1908, §3902 R. S. 1881, does not in any way limit the manner of the construction of the railroad, nor will it operate to limit the amount of damages to an·amount proportioned to an easement of the dimensions shown by such map and profile. p. 438.

5. EMINENT DOMAIN.—*Rights Acquired.*—Where there is no stipulation or agreement as to the manner of construction, the condemning party acquires the right to construct its works in any way it pleases, which is not negligent or unlawful and does not violate the rights of adjacent landowners. p. 439.

6. EMINENT DOMAIN.—*Assessment of Damages.*—Where there is no stipulation or agreement as to the manner of constructing the work on land taken under condemnation proceedings, the damages are to be assessed on the basis of the most injurious mode of construction that is reasonably possible, except that damages flowing from a violation of the obligations resting on adjoining proprietors are not ordinarily included. p. 439.

7. EMINENT DOMAIN.—*Damages.*—*Elements Included in Assessment.*—As a general rule in condemnation proceedings, all damages, present or prospective, that are the natural or reasonable incident of the work to be constructed, not including such as may arise from negligence, or unskillfulness, or from the wrongful act of those engaged in the work, must be assessed. pp. 441, 443.

8. EMINENT DOMAIN.—*Condemnation for Railroad Right of Way.*—*Extent of Rights in Property Taken.*—Although it takes only an easement, a railroad company, in the absence of any limitations by statute or the condemnation proceedings, acquires by the appropriation the absolute right to take so much of the earth and materials within the width and length of the right of way as it may be necessary or convenient to remove in constructing and repairing its roadbed and use it at other places. p. 442.

9. EMINENT DOMAIN.—*Condemnation for Railroad Right of Way.*—*Reconstruction of Road.*—*Rights of Successor to Condemning Party.*—Where a railroad company by virtue of condemnation proceedings acquired the right to use, on other parts of its road, the materials removed from the right of way in making its grade when the road was constructed, its successor, in the absence of a limitation in the statute, or in the appropriation proceeding, excluding it, had the same right as to materials moved in reconstructing and changing the grade. p. 442.

10. APPEAL.—*Review.*—*Verdict.*—*Evidence.*—A verdict against a railroad company, awarding damages for materials taken from the right of way in reconstructing the road, cannot be sustained in the absence of proof of the value of the materials removed. p. 442.

From Putnam Circuit Court; *John M. Rawley,* Judge.

Action by Hannah Hadley and others against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiffs, the defendant appeals.

(Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*Enloe & Pattison, Frank L. Littleton* and *Tarvin C. Grooms,* for appellant.

*George E. Easley* and *S. A. Hays,* for appellees.

Cox, J.—This was an action by appellees to recover damages for a trespass upon their lands alleged to have been committed by appellant in lowering the grade of its tracks on an established right of way across those lands and in doing other reconstruction work on its railroad. There was a trial by jury which returned a general verdict for appellees for $1,000. With the general verdict the jury also found the existence of certain material facts by their answers to interrogatories which had been submitted to them by the court. From a judgment on the general verdict this appeal is brought.

The errors assigned and not waived are: (1) the action of the court in granting leave and permitting appellees to file a supplemental complaint on oral motion after the jury had been sworn, the statements of counsel made and part of the evidence for appellees introduced; (2) in overruling appellant's motion to strike out the supplemental complaint; (3) in overruling appellant's motion to set aside the submission and continue the cause upon the filing of the supplemental complaint; and (4) in overruling appellant's motion for a new trial.

The filing of a supplemental complaint is done under the authority of §138 of the civil code (Acts 1881 p. 240, §408 Burns 1908, §399 R. S. 1881), which provides

1. that, ''The court may, on motion, allow supplemental pleadings, showing facts which occurred after the former pleadings were filed.'' Whether such a pleading may be filed rests in the sound discretion of the trial court which may be invoked by oral motion. Section 2 of the act of 1903 (Acts 1903 p. 338, §662 Burns 1908), which

provides, ''That every motion to insert new matter 2. or to strike out any part or parts of any pleading, deposition, report or other paper in the cause shall be made in writing and shall be set forth the words sought to be inserted or stricken out,'' has no application to a motion for leave to file a supplemental pleading. The contention of appellant, therefore, that because the motion for leave to file the supplemental complaint was not in writing it was error to permit it to be filed and to refuse to strike it out is without support.

Nor is there anything in the substance of the supplemental complaint which establishes the correctness of the contention made in behalf of appellant that the court erred in refusing to strike it out or to set aside the submission and continue the cause. It in no sense changed the theory or nature of the cause of action set out in the original complaint. The complaint was filed while the work of reconstruction of appellant's road across appellees' lands was being carried out and in it certain wrongful acts were alleged as being committed resulting in certain elements of damage. The supplemental complaint alleged the continuance of the same wrongs charged in the complaint and the completion of the work, and counted upon the same elements of damage as having been fully accomplished. *Schmoe* v. *Cotton* (1906), 167 Ind. 364, 79 N. E. 184, and cases there cited.

There is no vital difference between appellant and appellees over the facts involved in the case. But their controversy grows out of essentially different views of the law which should be applied to these facts and the controversy is involved in several causes for a new trial which appellant contends the trial court erred in overruling. It appears that in 1869 appellant's predecessor acquired by appropriation proceedings under statutory authority a strip of ground 99 feet wide for a permanent right of way for a railroad through a large tract of ground now owned by appellees.

The damages to the land occasioned by that appropriation were assessed and paid by the predecessors to appellees in the ownership of the land. At the time the instrument of appropriation was filed by appellant's predecessor for the purpose of acquiring that strip of ground it also filed in the office of the clerk of the circuit court a map and profile of the route intended to be adopted pursuant to the requirements of §5194 Burns 1908, 1 R. S. 1852 p. 409, §3902 R. S. 1881. The profile showed that the grade of the proposed railroad would require excavation on the right of way so acquired from zero to about fifteen feet in depth, and the road was so constructed with a single track on the land appropriated. Thus was the railroad maintained and operated until 1906 when appellant, which had become the owner of the railroad, acquired by further condemnation an additional strip of appellees' land lying along the north line of its right of way, which strip was 20.5 feet wide for substantially half the distance through appellees' lands and 40.5 feet wide for the rest. In this latter proceeding appellant was also given the right to enter upon the adjoining premises of the appellees at a certain point for the purpose of deepening and widening a ditch which crossed the old right of way and to deepen and widen the ditch for a distance of about 400 feet south from the center line of the old right of way. The appropriation proceeding of 1906 was authorized by statutes which provide for the improvement of the line by local alterations. §§5195 (subv. 7), 5247, 5248 Burns 1908, §§3903, 3913, 3914 R. S. 1881. In this proceeding appellant's complaint or instrument of appropriation showed the purpose of acquiring the additional land for its right of way to be to improve the line of railway by making local alterations by, among other things, cutting down grades and laying additional tracks, and they filed a map and profile showing the grades of the old track and new, and proposed cuts to be made in the process of lessening

grades, to a maximum depth of 30 feet. For this second invasion of appellees' land compensation was awarded to them to the value of the land taken and of a further amount as damages to the residue caused by taking the part appropriated. The award was paid by appellant and accepted by appellees.

Following this second appropriation appellant's reconstruction work was carried out. The ditch was deepened and widened as contemplated, and grades were reduced by cuts to a maximum depth of about 30 feet or, about 15 feet deeper than the former cuts. This increased depth of cut was substantially all within the limits of the old right of way, the newly-acquired ground being used for a part of the slope of the north side of the cut.

Appellees' complaint sought compensation for the following elements of damage to their land which it was alleged resulted from this reconstruction work: (1) excavating and removing great quantities of earth, rock and gravel from the old right of way in increasing the cut thereon from 15 feet to 30 feet in depth, to the amount of 60,000 cubic yards and converting and using it for fills and embankments for appellant's roadbed at other places on appellees' or other lands; (2) injury by washing and falling of appellees' lands along the south side of the old right of way caused by the greater depth of the cut thereon; (3) injury by increased volumes of water gathered on the old right of way by the greater depth of the cut, and cast on appellees' lands; (4) injury to a farm crossing by the greater depth of the cut on the old right of way; (5) injury to springs and wells by the additional excavation on the old right of way; (6) injury to the lands of appellees by depositing thereon along the line of the ditch the earth removed in the process of deepening and widening it as described in the warrant to appraisers in the condemnation proceeding of 1906.

It affirmatively appears from the answers to interroga-

tories which the jury returned with the general verdict awarding appellees $1,000 damages, that $600 of this sum was compensation for earth, rock and gravel removed and converted, relied upon as the first element of damage above stated; that $350 of it was allowed for the failure of the water in wells and springs, the fifth element of damage; and that $50, the residue of the $1,000 awarded, was given for damage to the adjoining land along the ditch by depositing thereon the materials removed in deepening and widening it, the sixth element of damage. It appears from other answers that nothing was awarded on account of the second, third and fourth elements of damage, as it appeared that no injury had been caused by washing and falling of lands along the south side of the cut, or from increased volume of water cast on appellees' lands, and that the destruction of the farm crossing was contemplated and paid for in the appropriation of 1906, and another provided in a different place.

The verdict for appellees for $1,000 must, therefore rest upon the first, fifth and sixth elements of damage. Relating to these elements of damage the evidence shows that 60,000 cubic yards of materials were removed from the old right of way in the process of lowering the grade of appellant's railroad and used at other places in the reconstruction work. It also shows that prior to this reconstruction work a concrete water conduit of large dimensions extended across and underneath the railroad and had for its outlet a ditch or perhaps natural waterway running southward across that part of appellees' lands lying south of the railroad. From the side of this ditch near the bottom, at a point on appellant's old right of way about midway between the track and the south line of the old right of way, there issued the waters of a spring which flowed through the lands of appellees and served the stock in the pasture on the place. The ditch was the same which appellant, through the appropriation of 1906, acquired the right to deepen and widen. In

doing this work on the ditch the old outlet of the spring was cut away and after this, and the completion of the reconstruction work, the spring no longer flowed. It appears, also, from the evidence that a well on that part of appellees' farm south of the railroad had materially failed, after the reconstruction work was done, in the supply of water it furnished. The evidence also shows, that the earthy materials removed in deepening and widening the ditch, pursuant to the right acquired by the appropriation of 1906, were not taken away but were deposited by appellant on the land of appellees along the line of the ditch where the work was done.

Appellant's motion for a new trial which it is insisted the trial court erred in overruling assigns for causes that the assessment of the amount of recovery is erroneous, being too large; that the damages assessed by the jury are excessive; that the verdict is contrary to law; that the verdict is not sustained by sufficient evidence.

The theory of appellees' complaint, as to the work done on the old right of way, is that by the condemnation proceedings of 1869 the appellant acquired an easement for railroad purposes across the farm involved, in and to a strip of land 99 feet wide and from zero to 15 feet in depth and not more. This theory is founded on the assumption that the mere fact that appellant's predecessor filed in the clerk's office at the same time it instituted its proceeding to condemn, the map and profile required by §5194, *supra*, placed a limitation on its use of the easement and prohibited it or a successor from making a change of grade on the old right of way which would require excavation deeper than 15 feet. Or, to state the claim of appellees in another way, they contend that the right or easement of appellant, under the appropriation of 1869 was as definitely fixed as to depth as it was as to width, and that appellant had no more right to excavate below the profile line of 15 feet in depth than it had to take for its use the surface of additional land

beyond and lateral to the 99 feet in width which it had acquired, without acquiring such right either by purchase or condemnation. It is not contended that the complaint or instrument of appropriation of appellant's predecessor in the condemnation of 1869 limited the depth of the easement or that the evidence shows that the damages were assessed in that proceeding on the basis of such a limitation; but it is contended that the map and profile were to such an extent a part of the appropriation as to put a limit on the rights acquired by that appropriation. It is upon this theory that appellees claimed the ownership of the earthy materials underlying the surface of the old right of way which were removed and used at other points in the reconstruction of appellant's railroad. Upon this theory the cause was submitted to the jury by the trial court, and obviously, upon this theory the jury awarded appellees $600 as compensation for the 60,000 cubic yards of earth, rock and gravel alleged to have been removed and converted by appellants.

On the other hand appellant contends that the filing of the map and profile was not required by §5194, *supra,* to precede or accompany the condemnation of 1869, but only to precede the construction of the railroad, and that it was no part of the appropriation proceedings. And, it is contended, as the complaint or instrument of appropriation did not seek to limit the compensation for the easement by limiting the depth of it, appellant's predecessor must be deemed to have acquired the right to build its road or change it to the best advantage to any depth of cut or height of fill which the width would support, and to use materials removed in making deeper cuts for making fills at other points and that for all damages growing out of the exercise of that right in a proper manner the owners of the land must be deemed to have been compensated by the award in the condemnation of 1869. If appellant's contention is correct, the court erred in overruling its motion for a new trial.

The statute (§5194 Burns 1908, 1 R. S. 1852 p. 409,
4.  §12, §3902 R. S. 1881), in obedience to which
appellant's predecessor filed the map and profile of
its route in 1869, reads as follows  "Every such company,
before proceeding to construct a part of its road into or
through any county named in its articles of association,
shall make a map and profile of the route intended to be
adopted by such company, which shall be certified by a
majority of the directors, and filed in the office of the clerk
of such county, for the inspection and examination of all
parties interested therein."   Basing the decision primarily
on the plain import of the words "before proceeding to
construct," used in the above section, it has been held in
this State that the filing of the map and profile as pro-
vided therein is not required to precede condemnation of
land for the right of way.  *Southern Ind. R. Co.* v. *Indian-
apolis, etc., R. Co.* (1907), 168 Ind. 360, 372, 81 N. E. 65,
13 L. R. A. (N. S.) 197; *Cleveland, etc., R. Co.* v. *Doan*
(1911), 47 Ind. App. 322, 94 N. E. 598.  See, also, *Missouri
River, etc., R. Co.* v. *Shepard* (1872), 9 Kan. 647; *Chicago,
etc., R. Co.* v. *Grovier* (1889), 41 Kan. 685, 21 Pac. 779.
Another section of the act in force when the appropriation
of 1869 was made, the map and profile filed, and appellant's
road built (1 R. S. 1852 p. 409, §15, §3907 R. S. 1881,
§5236 Burns 1908), authorizes a railroad company to enter
upon any land for the purpose of examining and surveying
its line and to appropriate so much thereof as may be neces-
sary.  Following this authorization it is provided that the
corporation "shall *forthwith*" deposit with the clerk of the
circuit court "a description of the rights and interests in-
tended to be appropriated," and pursuant to this instrument
of appropriation appraisers are appointed to assess damages
if owner and corporation cannot agree upon the amount
of the compensation for the taking.  It has been considered,
therefore, that the instrument of appropriation and the
order to appraisers were alone to be looked to for a descrip-

tion of what was taken and for fixing the basis for the assessment of damages.   *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co., supra; Cleveland, etc., R. Co.* v. *Doan, supra; Prather* v. *Jeffersonville, etc., R. Co.* (1875), 52 Ind. 16, 40.   It is manifest that the mere filing of the map and profile in accordance with the requirement of §5194, *supra,* cannot, therefore, be held to have limited the manner of the construction of the railroad in 1869 so as to have necessarily limited the amount of the damages awarded in the appropriation proceeding of that time to an amount proportioned to an easement not greater than 15 feet in depth.

In 2 Lewis, Eminent Domain (3d ed.) §712, it is said ''In the absence of any statute, it may be doubted whether the condemnor can be compelled to limit itself to any particular plan of construction.   But the authorities fully sustain the position that the condemnor may impose this limitation upon itself by stipulating to construct the work in a specified manner.   That is, it may condemn the right to improve and use generally according to the powers conferred or it may condemn the right to improve and use in a specified manner.   Where a limited right is desired, the limitation should be made a part of the record, by being embodied in the petition or order of condemnation or otherwise.   *   *   *   When a particular manner of construction has been stipulated for or agreed upon, the damages should be assessed on the basis of such construction.''   Where there is no stipulation or agreement as to the manner of construction the rule is that the condemning party will acquire the right to construct its works in any way it pleases, which is not negligent or unlawful and which does not violate the rights of adjacent landowners, and it will have the right to change the mode of construction at pleasure, subject to the same limitations. And as the damages must be assessed once for all, and as the taker may obviate all difficulty by stipulating to construct the works in a specified way, the rule is that the

damages are to be assessed on the basis of the most injurious mode of construction that is reasonably possible. Except, however, that damages flowing from a violation of the obligations resting on adjoining proprietors are not ordinarily included. 2 Lewis, Eminent Domain (3d ed.) §§713, 818-821, 830, 845, 846. In §830, *supra,* it is said: "The condemnor may bind itself to a specified plan of construction or specified use of the property and have the damages assessed upon that basis. In that case an action can be maintained for any damage caused by a subsequent change in the works or use. So if the damages were in fact assessed on the basis of a certain mode of construction, by the procurement or acquiescence of the parties, it has been held that this fact may be shown and relief obtained in case of a change of construction. But if there has been no such limitation in the condemnation, the condemnor acquires the right to change its works, or increase or change the use of the property as it may deem best, so long as it exercises due care and skill in so doing, and keeps within the purpose of the original appropriation, and no action will lie for damages caused by such changes." In the case of *Brainard* v. *Clapp* (1852), 10 Cush. (Mass.) 6, 57 Am. Dec. 74, it was said: "the right and power of the company to use the land within their limits, may not only be exercised originally, when their road is first laid out, but continues to exist afterwards; and if, after they have commenced operations, it is found necessary, in the judgment of the company, to make further uses of the land assigned to them, for purposes incident to the safe and beneficial occupation of the road, by raising or lowering grades, cutting down hills, and removing trees, they have a right to do so to the same extent as when the railroad was originally laid out and constructed." See, also, *Cassidy* v. *Old Colony R. Co.* (1886), 141 Mass. 174, 5 N. E. 142; *Brinkley* v. *Southern R. Co.* (1904), 135 N. C. 654, 47 S. E. 791; 2 Elliott, Railroads (2d ed.) §946b; Nichols, Eminent Domain §126.

The general rule in condemnation proceedings is that all damages, present or prospective, that are the natural or reasonable incident of the improvement to be made 7. or work to be constructed, not including such as may arise from negligence, or unskillfulness, or from the wrongful act of those engaged in the work, must be assessed. Damages are assessed once for all, and the future necessities as well as the present needs of the condemnor are to be taken into consideration. This rule has long prevailed in this State. *White* v. *Chicago, etc., R. Co.* (1890), 122 Ind. 317, 23 N. E. 782, 7 L. R. A. 257; *Chicago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213, 27 N. E. 477; *Rehman* v. *New Albany, etc., R. Co.* (1893), 8 Ind. App. 200, 35 N. E. 292; *Union Traction Co.* v. *Pfeil* (1906), 39 Ind. App. 51, 57, 78 N. E. 1052. In the face of this general rule appellees could only succeed in this action, in recovering damages resulting from the change of grade of appellant's railroad on the old right of way, accomplished in a proper manner, on the theory that appellant's predecessor had, in the appropriation proceeding of 1869, limited the rights sought to be acquired by it and had procured an assessment of damages proportioned to these limited rights. Appellees' complaint does not go to this extent, but it relies upon the filing of the map and profile which, as we have seen, were no part of the condemnation unless made so by the condemnor. There is no specific allegation in appellees' complaint that the rights acquired were limited and the damages curtailed. But, on the contrary, the copy of the instrument of appropriation and the order to the appraisers which were made exhibits to appellees' complaint show nothing but a general appropriation of the strip of land 99 feet wide for railroad purposes. Nor is there any evidence that appellant's predecessor took an easement limited as to depth except the bare circumstance that the cuts made for the grade as it was first constructed did not exceed 15 feet

in depth. No evidence whatever is presented that the damages were awarded on the basis of such a limited easement. It is, as claimed by counsel for appellees, generally considered that the owner of the fee retains the ownership of minerals such as coal, oil and others and may remove such as can be taken out without interfering with the operation of the road. But it does not follow that the owner retains title to earthy materials left underlying the road as first built and which it may afterwards be necessary to remove in making a desirable change of grade. In the absence of any limitations by statute or the condemnation proceedings a railroad company, although it takes only an easement, acquires by the appropriation, the absolute right to take so much of the earth and materials within the width and length of the right of way as it may be necessary or convenient to remove in constructing and repairing its road bed and use it at other points. 2 Lewis, Eminent Domain (3d ed.) §849; *Preston* v. *Dubuque, etc., R. Co.* (1860), 11 Iowa 15; *Earlywine* v. *Topeka, etc., R. Co.* (1890), 43 Kan. 746, 23 Pac. 940; *Chapin* v. *Sullivan Railroad* (1859), 39 N. H. 564, 75 Am. Dec. 237; *Taylor* v. *New York, etc., R. Co.* (1875), 38 N. J. L. 28; *Hendler* v. *Lehigh Valley R. Co.* (1904), 209 Pa. St. 256, 58 Atl. 486, 103 Am. St. 1005; *Aldrich* v. *Drury* (1867), 8 R. I. 554, 5 Am. Rep. 624; *Lime Rock R. Co.* v. *Farnsworth* (1893), 86 Me. 127, 29 Atl. 957. As the condemnation of 1869 gave to appellant's predecessor the right to use, on other parts of its road, the materials removed from the right of way in making its grade when the road was constructed, it follows that appellant had the same right to the materials removed in making the change of grade in the absence of a limitation either by statute or the appropriation proceeding which excluded it. It is manifest, therefore, that to the extent of the sum of $600, awarded for the removal of 60,000 cubic yards of earthy materials, the verdict cannot be sustained. Another

reason the verdict awarding damages for this element cannot be sustained lies in the fact that there was no proof of the value of the materials removed.

Appellees attempt to sustain the verdict so far as 7. it gave $350 for injury to the well and the spring on the theory that the evidence shows the impairment of the first and the destruction of the latter were caused by the excavation to the lower level on the old right of way elsewhere than in the ditch. If this were conceded, under the rules of law which have hereinbefore been given consideration, the damages would be deemed to have been included in the award of 1869 in the absence of evidence to the contrary. That the spring was destroyed by the deeper cut on the old right of way, is wholly inferential if not, indeed, mere speculation. The outlet of the spring was, it is true, within the bounds of the old right of way but not at the point of the deepest excavation. It was within the ditch which, in the condemnation of 1906, appellant secured and paid for the right to deepen and widen. In doing this work the place where the waters of the spring emerged from the earth was cut away. If this work destroyed the spring then it is obvious that appellees have been paid the damages by the award of 1906, for its presence in the way of excavation would suggest the possible if not probable destruction of it and give a basis for damages. To the claim that the greater depth of the cut of the old right of way cut off the subterranean stream of which the spring was an outlet and also impaired the well, it may be further answered that when appellant acquired the additional strip along the north side of the old right of way by the appropriation of 1906 it was with the right to excavate on this newly-acquired strip to a depth of 30 feet, and for the damages resulting appellees were compensated in that proceeding. It would seem that the exercise of that right would, on appellees' theory, have been as potential in destroying the spring and impairing the well as the same depth of cut on the old right

of way. In fact it fairly appears from appellant's instrument of appropriation in the proceeding of 1906 that it sought to acquire the additional strip of land for the purpose of lowering the grade on the old right of way and the damages awarded included compensation for the land taken and also for injury to that not taken. So, in any event, it would appear that appellees have been compensated for this element of damages either by the award of 1869 or that of 1906.

Counsel for appellees concede appellant's right to deepen and widen the ditch and that the work of doing this was in accordance with the right secured by the condemnation of 1906. It is conceded now that appellant had the right to deposit the materials removed from the ditch on appellees' lands along the sides of the ditch if it did so in a careful and proper manner. But it is now claimed that the evidence shows that appellant negligently scattered the materials and thereby committed unnecessary damage to the lands. Appellees' complaint as to this element of damages, does not appear to proceed upon the theory of negligence but rather on the theory that appellant could not lawfully deposit the materials removed on appellees' lands in any manner.

Other causes for a new trial are based on alleged errors on the part of the court in giving and refusing to give instructions and in admitting and excluding evidence. So far as they are of any importance they involve the questions of law which have been considered. Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 101 N. E. 473. Reported and annotated in 45 L. R. A. (N. S.) 796   See, also, under (1) 31 Cyc. 500; (2) 31 Cyc. 501; (3) 31 Cyc. 502; (4) 15 Cyc. 817; (5) 15 Cyc. 1025; (6, 7) 15 Cyc. 895; (8) 15 Cyc. 1021, 1025; 33 Cyc. 166; (9) 33 Cyc. 227; (10) 13 Cyc. 213, 218. As to damages or injuries for which compensation must be given landowners in eminent domain proceedings, see 31 Am. Dec. 372; 88 Am. Dec. 113; 4 Am. St. 399; 9 Am. St. 144; 19 Am. St. 459; 22 Am. St. 50; 85 Am. St. 291. As to eminent domain proceedings with reference to railroad right of way, see 19 Am. St. 459.