**Leland REES and Fannie S. Rees, Defendants-Appellants,**

**v.**

**PANHANDLE EASTERN PIPE LINE CO., Plaintiff-Appellee.**

**No. 4–682A152.**

Court of Appeals of Indiana, Third District.

Aug. 15, 1983.

Rehearing Denied Nov. 1, 1983.

⚷ **60**

Frank E. Spencer, Indianapolis, for defendants-appellants.

Thomas A. Withrow, Diane Hubbard Kennedy, Henderson, Daily, Withrow, Johnson & Gross, Indianapolis, Tom R. White, Christian, Waltz, White, Klotz & Free, Noblesville, for plaintiff-appellee.

STATON, Judge.

The trial court awarded a default judgment to Panhandle Eastern Pipe Line Co. (Panhandle). It permanently enjoined Leland and Fannie Rees from interfering with Panhandle's easement rights to maintain its pipelines which traverse the Reeses' property. On appeal, the Reeses raise several issues surrounding their general contention that the grant of a permanent injunction was erroneous because the trial court did not decide whether Panhandle's actions constituted inverse condemnation:

(1) Did the trial court abuse its discretion by denying the Reese's motion for relief from judgment when they failed to appear at trial despite their actual notice of the trial date?

(2) Did the trial court err in determining that the easements were intended to be 66 feet wide?

(3) Did the trial court err in determining that the Reeses were not entitled to damages?

Affirmed.[1]

Prior to this dispute, Panhandle had acquired easement rights to operate four natural gas pipelines over land owned by the Reeses. These easements allowed Panhandle to maintain the pipelines for the detection of gas leaks. Nevertheless, in 1975 Leland interfered with Panhandle's preparation to clear brush and trees from the pipelines. In early 1976, Panhandle obtained a preliminary injunction against the Reeses prohibiting further interference.

After unsuccessfully appealing the grant of the preliminary injunction, the Reeses filed a counterclaim for inverse condemnation. The trial court dismissed the counterclaim because the Reeses had not asked the court's permission to file it. On June 19, 1980, the trial court gave the Reeses fourteen days to file their counterclaim. Again, the Reeses unsuccessfully moved to file a counterclaim.

The Reeses failed to appear at trial on November 5, 1980 even though they had actual notice of the trial date. After hearing evidence from Panhandle, the trial court entered a default judgment permanently enjoining the Reeses from interfering with Panhandle's easement rights to maintain its pipelines. In addition, the trial court interpreted the reasonable width of each easement to be 66 feet.

Pursuant to Ind.Rules of Procedure, Trial Rule 60(B), the Reeses filed a motion to have the default judgment set aside, which

**1.** Panhandle contends that the Reeses have waived this appeal because they filed their motion to correct errors beyond the 60 day time period after the November 5, 1980 judgment. We disagree. Pursuant to TR. 60(B)(8), the Reeses timely filed their motion for relief from judgment within one year of the November 5, 1980 judgment. The trial court's denial of the Reeses' TR. 60(B) motion is considered a final judgment. The Reeses timely filed their motion to correct errors within 60 days of that judgment. *See Siebert Oxidermo v. Shields* (1983), Ind., 446 N.E.2d 332.

the trial court denied. The trial court also denied the Reeses' motion to correct errors which requested damages for inverse condemnation.

### I. (a).

### Compulsory Counterclaims

The Reeses contend that the trial court erroneously denied their request to file a counterclaim. They assert that the trial court was required to allow them to file their counterclaim because it was a compulsory counterclaim under TR. 13(A). Although we agree with the Reeses that the trial court erred by not allowing some of their claims as compulsory counterclaims, the error is harmless because the Reeses inexcusably failed to appear and argue their claims at trial.

A counterclaim is a claim by a defendant which would defeat or diminish the plaintiff's claim. *Tron v. Yohn* (1896), 145 Ind. 272, 43 N.E. 437. Pursuant to TR. 13, counterclaims are either compulsory (required to be made) or permissive (at the option of the defendant or the court). Only the compulsory counterclaim is required to be filed because it is a matter which, if brought in a former controversy, would preclude repetitious litigation in a subsequent controversy. *Middlekamp v. Hanewich* (1977), 173 Ind.App. 571, 586, 364 N.E.2d 1024, 1034.

TR. 13(A) sets forth a three part test to determine whether a counterclaim is compulsory:

"Trial Rule 13

COUNTERCLAIM AND CROSS–CLAIM

"(A) Compulsory counterclaims. A pleading shall state as a counterclaim (1) *any claim which at the time of serving the pleading the pleader has against any opposing party,* (2) if it *arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim* (3) *and does not require for its adjudication the presence of third parties* of whom the court cannot acquire jurisdiction. . . ." (Emphasis added.)

Under the first part of the test, we must determine whether the Reeses' claim for damages was mature at the time they served their answer to Panhandle's complaint. *Middlekamp, supra,* 364 N.E.2d at 1035. The maturity of the Reeses' claims ranges from 1959 to 1978. Only the claims which had matured *before* they filed their first answer meet the first part of the test for compulsory counterclaims. The claims which matured *after* the Reeses filed their first answer are permissive counterclaims under TR. 13(E). *Whipple v. Dickey* (1980), Ind.App., 401 N.E.2d 787, 792.

According to TR. 13(E), such counterclaims may be filed only with the trial court's permission:

"(E) Counterclaim maturing or acquired after pleading. A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading. . . ."

From a reading of the record, we cannot say that the trial court abused its discretion in denying the permissive counterclaims which had matured after the Reeses filed their first answer.

The trial court was required to allow those counterclaims which were mature when the Reeses filed their first answer only if they meet the second and third parts of the TR. 13(A) test for compulsory counterclaims. The second part of the test is whether the claims "arose out of the transaction or occurrence that is the subject-matter of the opposing parties claim. . . ." TR. 13(A). Transaction has been defined as "a series of many occurrences which are logically related." *Moore v. N.Y. Cotton Exchange* (1926), 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 757; *Middlekamp, supra,* 364 N.E.2d at 1035. Therefore, if the claims, which were mature at the time the Reeses filed their first answer, are logically related to Panhandle's complaint for injunction, the claims have met the second part of the test of compulsory counterclaims.

Two of the Reeses' three claims which were mature when they filed their

first answer meet the second part of the test. First, the Reeses claim that Panhandle's award of 66 feet wide easements exceeds the original easement grant entitling them to compensation. Second, they claim that the construction of Panhandle's fourth pipeline caused exposure and washout of two hills. Third, the Reeses claim damages from Panhandle's removal of their trees, shrubs, and raspberries along its easements.

The first and third claims are logically related to Panhandle's claim to maintain its pipelines because they concern to what extent Panhandle may maintain its pipelines. The second claim is not logically related to Panhandle's complaint because it concerns Panhandle's actions which were considered in an action for eminent domain.[2] Therefore, two of the claims which had matured when the Reeses filed their answer meet the first two parts of the test for compulsory counterclaims.

The third part of the test of a compulsory counterclaim requires that no claim require the presence of a third party. Neither the claim for a property description nor the claim for damages requires the presence of a third party. These two claims also meet the third part of the test. Therefore, the trial court erred when it dismissed these two compulsory counterclaims. However, the error is harmless because the Reeses inexcusably failed to appear at trial.

### I. (b).

#### Failure to Appear

The Reeses contend that the trial court abused its discretion in denying their motion for relief from the default judgment because their failure to appear at trial is excusable. They allege that the trial court and Panhandle should be held responsible for failing to notify them of the trial date. Further, they assert in their appellate brief

that "Punishment for not keeping track of a trial date entered of record almost five (5) months prior to trial, under the circumstances of this case, is far out of proportion to the amount of protection needed by the Plaintiff and the substantial loss to the Defendants." (Appellant's brief at 17.) We disagree.

According to TR. 60(B), a motion for relief from judgment may be granted to set aside a default judgment for several reasons. The Reeses specifically argue that the judgment should be set aside pursuant to TR. 60(B)(4) because they had insufficient notice of trial.

The grant or denial of a TR. 60(B) motion is reviewable for an abuse of discretion. *Fitzgerald v. Brown* (1976), 168 Ind. App. 586, 344 N.E.2d 309. Although default judgments are not favored, we will reverse the denial to set them aside only if the denial is clearly against the logic and effect of the facts and circumstances before the trial court. *Urbanational Developers, Inc. v. Shamrock Engineering* (1978), 175 Ind.App. 416, 372 N.E.2d 742, 746.

The facts favorable to the denial of the TR. 60(B) motion are as follows: Leland and his attorney were present at the pretrial conference during which the trial court announced the trial date. The trial date was noted in the court docket and the clerk stated that she had timely mailed written notice of the trial date to the address given to her by Leland's attorney.

The applicable trial rules governing notice are TR. 5(B)(2) and TR. 72(D) which read in pertinent part:

"Trial Rule 5(B)(2): "... It shall be the duty of attorneys when entering their appearance in a cause or when filing pleadings or papers therein, to have noted on the bench docket or said pleadings or

---

**2.** *City of Elkhart v. NO–BI Corp.* (1981), Ind. App., 428 N.E.2d 43, 47 quoting *Cleveland etc., R. Co. v. Hadley* (1913), 179 Ind. 429, 441, 101 N.E. 473, 477:

"The general rule in condemnation proceedings is that all damages, present or prospective, that are the natural or reasonable incident of the improvement to be made or work

to be constructed, not including such as may arise from negligence, or unskillfulness, or from wrongful act of those engaged in the work, must be assessed. *Damages are assessed once for all, and the future necessities as well as the present needs of the condemnor are to be taken into consideration.*" (Emphasis added.)

papers so filed the address and telephone number of their office. Service by delivery or by mail at such address shall be deemed sufficient and complete."

"Trial Rule 72(D): "... It shall be the duty of attorneys when entering their appearance in a cause or when filing pleadings or papers therein, to have noted on the bench docket or on said pleadings or papers so filed, their mailing address, and service by mail at such address shall be deemed sufficient."

Both rules state that once the attorney has given his mailing address to the clerk, notice by mail is sufficient. Moreover, Leland's attorney had a duty to check the court records himself. *International Vacuum, Inc. v. Owens* (1982), Ind.App., 439 N.E.2d 188, 190. He could not expect to rely on notice from either Panhandle or the court. *Id.* Therefore, in light of the facts and the applicable trial rules, the trial court did not abuse its discretion when it denied the Reeses' TR. 60(B) motion for relief from judgment because the Reeses inexcusably failed to appear at trial.

## II.

### Interpretation of Undefined Easement

The Reeses contend that the trial court erred in determining that the easements were intended to be 66 feet wide. They assert that an eminent domain proceeding and not the trial court has the power to determine the extent of an undefined easement. The Reeses further assert that the trial court ignored the "law of the case" established by the Appellate decision rendered on the grant of the temporary injunction. We disagree.

An Appellate Court decision rendered upon a set of facts becomes the "law of the case" of those facts. *Fair Share Organization, Inc. v. Mitnick* (1964), 245 Ind. 324, 198 N.E.2d 765. If the same facts are then litigated at trial, the Appellate decision remains the "law of the case" binding the trial and a subsequent Appellate Court. *Id.* 198 N.E.2d at 766. The facts presented at trial were the same facts presented in the temporary injunction hearing. Therefore, the first Appellate Court decision is the "law of this case" and governs the trial court and this Court. However, the Appellate Court did not specifically hold that a trial court could not determine the extent of an undefined easement. *See Rees v. Panhandle Eastern Pipe Line Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640, 650 n. 5. Rather, it merely stated in dicta that it doubted whether a trial court could do so. *Id.*

A trial court can determine the extent of an undefined easement. *Jeffers v. Toschlog* (1978), 178 Ind.App. 603, 383 N.E.2d 457; *Vanatta v. Waterhouse* (1904), 33 Ind.App. 516, 71 N.E. 159. In *Jeffers, supra* the Court held that

"The easement was created for the purpose of permitting vehicles to pass through the driveway. No width of the easement was stated. The trial court had authority to construe the easement provision in a manner which would carry out the intentions of the parties. The trial court detemined that the easement would have to be eleven feet wide in order to permit the passage of vehicles. The trial court did not err."

*Id.* 383 N.E.2d at 460.

Panhandle's easements were created to permit the safe operation of natural gas pipelines. The threat of gas leaks requires that Panhandle maintain visibility of its pipeline areas. It was a reasonable determination that the parties had intended the pipeline areas to remain safe and that 66 feet was necessary to ensure such safety. Therefore, the trial court did not err by determining that the extent of the pipeline easements was intended to be 66 feet wide.

## III.

### Damages

The Reeses contend that the trial court erred in denying their request for damages. They allege that the easement grant required the trial court to appoint three appraisers to determine the damages

resulting from the permanent injunction.[3] The trial court did not err.

 The trier of fact can decide whether damages have resulted from unauthorized use of an easement. *Hidden Valley Lake, Inc. v. Kersey* (1976), 169 Ind.App. 339, 344, 348 N.E.2d 674, 677. The Reeses inexcusably failed to appear at trial to present any evidence of damages. The evidence presented showed that removal of the vegetation was necessary to effectuate the safe operation of Panhandle's natural gas pipelines. *See Board of Comr's of Vanderburgh County v. Joeckel* (1980), Ind.App., 407 N.E.2d 274, 277. This uncontroverted evidence supports the trial court's finding that the Reeses were not entitled to damages.

Affirmed.

BUCHANAN, C.J. (by designation), and HOFFMAN, P.J., concur.

---

**3.** The Reeses also alleged that IC 1980, 32–11–1–1 et seq. (Burns Code Ed.) required the trial court to appoint appraisers to assess their dam-ages. This statute governs only eminent domain proceedings and is therefore inapplicable in this situation.